DOCKETED
FEB 0 5 2001

FILED-ED4
01 FEB -2 AM 9:32
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAV MIRFASIHI, on behalf of himself and all others similarly situated,

Plaintiff,

v.

FLEET MORTGAGE CORPORATION,

Defendant.

No. 01C 0722

JURY TRIAL DEMANDED

JUDGE NORGLE

MAGISTRATE JUDGE DENLOW

## CLASS ACTION COMPLAINT

Plaintiff, Mav Mirfasihi, on behalf of himself and all other persons similarly situated, by his undersigned attorneys, for his class action complaint, alleges upon personal knowledge as to his own acts, and upon the investigation made by and through his attorneys, and the allegations set forth in State of Minnesota v. Fleet Mortgage Corporation (case #). Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth below after a reasonable opportunity for discovery.

## NATURE OF ACTION

1. Plaintiff brings this action as a class action on behalf of himself and all others persons who held mortgages originated or serviced by Fleet Mortgage Corporation ("Fleet") during the period May 1, 1998 through the present (the "Class Period"), and who were assessed improper late fees and/or finance charges (the "Late Fee Class").

2. Plaintiff also brings this action as a class action on behalf of himself and all others persons who held mortgages originated or serviced by Fleet Mortgage Corporation ("Fleet") during the Class Period and whose mortgage account information was improperly provided to

third parties by defendant Fleet. Excluded from the Membership Class are the citizens of the State of Minnesota.

## FACTUAL ALLEGATIONS

1. Plaintiff and the other members of the Class held mortgages originated or serviced by defendant Fleet. Pursuant to the terms of their mortgages, a late payment fee would be assessed only if the mortgagee's payment was received after the due date stated on the mortgagee's monthly statement.

2. At times throughout the Class Period, Fleet improperly and illegally assessed late payment fees to plaintiff and the other members of the class despite the fact that their monthly payments were received by Fleet on or before the due date.

3. During the Membership Class Period, defendant Fleet improperly and illegally provided confidential and private information concerning members of the Membership Class, including mortgage account numbers, to companies engaged in telemarketing. Fleet and these telemarketing companies used the information concerning Membership Class Members to charge membership fees to the mortgage accounts of Membership Class Members using offers which would and did deceive, mislead or confuse Membership Class Members.

4. Fleet claims to service mortgage loans for approximately 1.5 million American homeowners. It is one of the ten largest mortgage service companies in America. Fleet not only services loans originated by one of its affiliates, it also purchases on the secondary market the servicing rights for residential loans. Illinois homeowners, therefore, may originate a loan with a lender other than an affiliate of Fleet, but have their loan serviced by Fleet when it purchases the servicing rights in the secondary market.

5. *Fleet's Business Partnership With Providers of Membership Programs*

6. Fleet makes additional profit from servicing homeowner mortgage loans by entering into business partnerships with telemarketing companies that sell membership programs. Fleet supplies these companies with confidential information about its customers, including the customer's name, address and loan account number. The membership programs solicit Fleet mortgage customers and then identify by loan number which Fleet customers supposedly agreed

to have the membership program fee charged to their mortgage loan. This form of selling, known as "pre-acquired account telemarketing," allows the membership program fee to be charged to the homeowner's mortgage account without the seller obtaining from the consumer his or her signature approving the mortgage account charge.

7. The membership programs sold by Fleet and its business partners typically promise consumers discounts on purchases from other companies. The annual cost of memberships generally ranges from about $50 to $200. These programs purport to save consumers money on purchases by providing coupons, discounts, or access to free or reduced price services. The membership programs focus on specific types of services, such as legal services, home shopping, health care services or car repair. In 1998, for example, Fleet participated in the telemarketing of "Personal Privacy Guard," which ironically focused on consumer concerns about financial privacy.

8. In approximately the last three years, Fleet has entered business partnerships with at least six companies that market membership programs by telemarketing. Some of these six companies offer more than one type of membership program to Fleet customers. During 1999 and 2000, Fleet and its partners have conducted telemarketing "campaigns" for eleven different membership programs. Fleet currently participates in telemarketing to its customers of the following membership programs: a home shopping service; two different "discounted" legal services programs; a car repair program; and a program offering discounts on dental services, eye wear and prescription drugs. Prior to 1998, Fleet had business partnerships with other such membership companies.

9. *Fleet's Telemarketing Offer and Sale of Membership Programs To Its Customers*

10. The data shared by Fleet with these providers of membership programs has included specific information about Fleet customers and their mortgage accounts. Fleet has provided its telemarketing partners with the name, address and phone number of the consumer, and with the consumer's mortgage loan account number. Through the end of June 1999, Fleet also provided its partners with specific information about the consumer's mortgage account, such as original loan amount, current loan balance, monthly payment, loan origination date and loan maturity

date. Fleet has agreed to use criteria proposed by its business partners to "segment" the list of its customers about whom it shares data, so that the membership program partner receives information only for customers meeting specified criteria.

11. Sharing of data about consumers is just the first step in Fleet's participation in the sale of membership programs. Fleet is engaged in almost all other facets of the offer and sale of memberships to its customers, including profiting from the sale of the memberships.

12. Most membership program providers offer a variety of such programs. Fleet decides which membership programs will be offered to its mortgagor homeowners. Fleet has determined the content and details of the programs with its partners prior to solicitation of Fleet customers. Among other matters, Fleet has negotiated the amount that will be charged to its customers for the program, the material that will be provided to its customers, the time period during which the material will be mailed, and the exact dates during which the solicitations will occur. Fleet even has determined or approved in writing the hours of operation of the call center for the membership program and the "average speed of answer" required for the call operators.

13. Fleet reviews and approves the telemarketing "scripts" used by its membership program partners, maintaining control over the content of these uniform representations made to its customers. As stated in the contract with its currently largest telemarketing partner, "Signature will use a prepared script that Fleet has approved in advance in writing." Fleet similarly reviews and approves all related direct mail advertisements for these membership programs, as well as all other mailings about the membership, including the membership packet mailed to consumers deemed to have "accepted" the trial membership offer.

14. The actual telemarketing scripts used by Fleet and its telemarketing partners generally mention Fleet frequently in the script and leave the impression that the telemarketer is calling from, or in association with, Fleet. For instance, telemarketing scripts for the Signature legal service membership program have introduced the call with, "I'm calling you on behalf of The Legal Services Plan from Fleet" or "I'm calling you from The Signature Group at the request of Fleet Mortgage." The Fleet name also is clearly associated with or dominates direct mail advertisements that on occasion precede telemarketing calls.

15. Fleet and its business partners also have regularly shared data about the progress of these solicitation efforts. Fleet has negotiated the right to receive weekly reports about the success of the telemarketing and direct mail "campaigns" soliciting its customers to accept trial memberships. Fleet also has received other periodic reports about the joint marketing efforts with its business partners.

16. When the telemarketing partner deems that the consumer has consented to the sale, it informs Fleet that a charge should be issued to the Fleet customer's mortgage account. Fleet assumes sole responsibility for the billing and collection of membership program fees. Fleet retains a percentage of the amount paid by each homeowner-customer and passes the remainder to the membership program. In some cases, Fleet also receives a set amount for data provided about each Fleet customer.

17. When the sale is billed on the Fleet customer's mortgage account, Fleet takes the initial call from the many customers who call to complain that they do not understand the charge, that the charge was not authorized, or who otherwise seek to cancel the charge. Fleet has agreed to attempt to transfer these calls to the membership program providers, but Fleet has retained the right to handle the call and prospectively cancel the membership program charge for any such customer.

## FLEET's FAILURE TO DISCLOSE AND MISREPRESENTATION OF ITS SHARING OF CONSUMER DATA IN MEMBERSHIP PROGRAM SALES

1. Prior to May 1999, Fleet made no disclosure to its mortgage customers that it shared with telemarketers the customer's loan account number and data about the customer's mortgage account use and history. Consumers have a reasonable expectation of privacy about the sharing of such personal financial data with third parties. Fleet's mortgage customers have an especially compelling reason for maintaining such an expectation. Home ownership and residential mortgage loans are at the heart of both perceived and actual financial security for most average Americans. Mortgage accounts, unlike credit card accounts, have traditionally included only charges directly related to the homeowner's property and mortgage loan; specifically, principal, interest, real estate taxes and homeowner's insurance. Fleet is sharing information with

telemarketers that allow for charges to the customer's mortgage account for dental programs, car repair programs and the like. Until May 1999, Fleet shared this information without any disclosure of this practice to its customers.

2. In May 1999, Fleet announced a "Privacy Policy" for data held by the company about its mortgage customers. The Fleet privacy policy gives no indication of the reality of Fleet's use of personal customer data in telemarketing solicitation of membership programs. The policy states, in pertinent part:

> At Fleet, we believe the confidentiality and protection of customer information is one of our fundamental responsibilities. And while information is critical to providing quality service, we recognize that one of our most important assets is our customers' trust?.
>
> When it comes to sharing customer information with unaffiliated companies, Fleet places strict limits on who receives specific information about customer accounts or other personally identifiable data. Fleet may share information with such companies if they provide a product or service that may benefit our customers. Whenever we do this, we carefully review the company and the product or service to make sure that it provides value to our customers. **We share the minimum amount of information necessary for that company to offer its product or service**. (Emphasis added).

Although this policy concedes the responsibility and trust placed in Fleet by its mortgage customers, it fails to disclose Fleet's actual practice of using mortgage loan account numbers and other personal financial data as part of pre-acquired account telemarketing transactions -- a practice that clearly violates that trust.

1. At the time this policy was publicly disseminated in May 1999, Fleet was sharing detailed information about its customers' mortgage accounts, such as monthly payment amount or current balance, that was not "necessary" to allow telemarketers to solicit homeowners to join a membership program. In July 1999, when national attention began to focus on banks' sharing

of consumer financial information, Fleet started to restrict the type of information it shared with its business partners and stopped sharing this data. Because the nature of its membership program solicitations did not materially change from May to July of 1999, the information shared at the time Fleet announced its privacy policy could not have been necessary to share with its telemarketing partners.

2. Nor is the information Fleet currently shares about its customers necessary to complete a telemarketing offer. Fleet still provides its telemarketing partners not only with the customer's name, address and phone number, but also with the customer's mortgage loan account number. Fleet's telemarketing partners obviously could solicit Fleet customers to join the membership program without having the consumer's mortgage loan account number and without having the ability to cause charges to the consumer's mortgage account. Fleet and its telemarketing partners use the loan account number to process charges to the consumer's mortgage account without traditional evidence of consent, such as a writing or the consumer providing a credit card account number to the seller. The Fleet privacy policy does not reveal this form of solicitation and charging of mortgage accounts. Unless the customer was somehow aware of Fleet's use of pre-acquired account marketing techniques, he or she could not discern that "necessary" information to share includes information that allows the customer's mortgage account to be charged based on the determination of the telemarketing employee.

## FLEET's DECEPTIVE TELEMARKETING PRACTICES

Fleet Customer Complaints About Membership Program Charges

1. Homeowners with Fleet mortgage loans regularly complain that they have unknown charges on their mortgage account. Many of these customer complaints express outrage and anger that Fleet has abused its position by allowing such charges to their mortgage accounts. Fleet has received numerous complaints from customers regarding its optional insurance" products-- a term Fleet used to include both telemarketing of insurance policies and membership clubs. Customers overwhelmingly told Fleet that they did not sign up for products, and wanted to know how it was added to their mortgage accounts without their approval, consent or signature.

2. This steady flow of complaints by Fleet customers about membership program charges underscores the deceptive and misleading telemarketing practices used by Fleet and its partners in promoting these programs. Fleet also is aware, consciously avoids knowing, or should know, that a substantial percentage of consumers charged for the program each month are unaware that they are paying for a membership club on their mortgage accounts.

3. *Problems of Pre-Acquired Account Telemarketing And "Free Trial" Offers*

4. Fleet and its many telemarketing partners are engaged in a sales practice known as "pre-acquired account telemarketing." Fleet puts in the hands of the telemarketer the ability to cause a charge to the consumer's mortgage account without obtaining written approval of the homeowner or other traditional evidence of consumer consent. As shown by Fleet's experience, this form of telemarketing presents inherent opportunities for deception and consumer confusion, especially in the context of mortgage account billing and telemarketing pitches emphasizing "free trial offers," as used by Fleet.

5. A telemarketing sale not involving pre-acquired accounts typically requires that the consumer provide his or her credit card account number to the telemarketer, or that the consumer send a check or sign a contract in a later transaction. Other than a cash purchase, providing a signed instrument or a credit card account number is a readily recognizable means for a consumer to signal assent to a telemarketing deal. Pre-acquired account telemarketing removes these short-hand methods for the consumer to control when he or she has agreed to a purchase. The telemarketer with a pre-acquired account turns this process on its head. Fleet not only provides its telemarketing partners with the ability to charge the Fleet customer's mortgage account, but Fleet allows the telemarketing partner to decide arbitrarily whether the consumer actually consented. For many consumers, withholding their credit card account number or signature from the telemarketer is their ultimate defense against unwanted charges from telemarketing calls. Fleet's improper and illegal sales practices remove this defense.

6. With few exceptions, Fleet sells membership programs using a "free trial offer," "trial membership," or with a similar approach. Fleet's telemarketing scripts have mixed false statements or half-truths with material omissions to create a false impression that the consumer is

not asked to commit to a mortgage account charge during the call. Telemarketers have convinced consumers that the membership program offer involves no obligation by the consumer, and then have subtly switched the terms of the deal in a way that has a tendency and capacity to deceive, mislead and confuse consumers about the offer.

**Fleet's Mortgage Bill**

1. Fleet charges the mortgage account of its customers who fail to cancel the membership program. Forcing the consumer to discover and attempt to recover the membership charge does not remedy the deceptive telemarketing conduct. Fleet's billing practices, however, do not effectively notify consumers of the membership charge.

2. Fleet customers that have their monthly mortgage payment automatically debited from their checking accounts never receive written notice of the membership charge. Within approximately the last year, Fleet has ceased soliciting consumers with automatic deduction, but continues to charge its mortgage holders who previously signed up for a membership program while on automatic deduction.

3. For customers who receive a monthly mortgage statement and pay by check, Fleet's bill does not clearly indicate that a new charge has occurred or state the nature of the charge. In its most recent billing format, Fleet lists just the amount of the charge under the rubric "opt. products," with no indication of the name of the membership program or any other identifying information. This amount is noted only in an itemization near the bottom of the statement. Fleet does not list the charge in the "MONTHLY BILLING STATEMENT" summary that is prominently featured at the top of the monthly mortgage statement. Nor does Fleet send an explanation or other clear notice of the reason for the charge.

4. When customers call and complain about the charges that appear on their mortgage bills, Fleet attempts to transfer the call through a direct link to its membership partner. Fleet telemarketing partners attempt to "save" the "sale" with the customer. If the consumer refuses to accept this transfer, Fleet will cancel future charges for the consumer.

5. For consumers that do not discover the charge on the first monthly posting of the membership fee, however, Fleet does not routinely notify the consumer that this charge has been

assessed in prior months. Unless the consumer specifically inquires about prior charges and demands a refund, Fleet and its partners retain these prior membership fee charges. When the customer demands a refund, Fleet routinely refuses to return past membership charges. Fleet even regularly refuses to refund the amount charged during the alleged "free trial" period. Fleet does not disclose its practice of refusing to make refunds.

## JURISDICTION AND VENUE

1. Plaintiff brings this action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., the Illinois Consumer and Deceptive Practices Act and common law.

2. This Court has jurisdiction in this action pursuant to 28 U.S.C. § 1331. This Court has pendant jurisdiction over plaintiff's state law claims which are based on violations of the Illinois Consumer and Deceptive Practices Act and common law.

3. Venue is proper in this District based on the residence of the plaintiff and the fact that many of the acts giving rise to the violations complained of herein occurred and had their primary effects in this District.

## THE PARTIES

1. Plaintiff obtained a mortgage from Fleet in August of 1998. During the Class Period, plaintiff was assessed late payment fees by Fleet even though his monthly payments were received on or before their due dates.

2. Defendant Fleet is a South Carolina Corporation and is one of the largest originators and servicers of mortgages in the United States. Fleet originates mortgages as a division of Fleet National Bank.

## CLASS ACTION ALLEGATIONS

1. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedures 23(a) and (b)(3) on behalf of the Late Fee Class and the Membership (together the "Classes")

2. The members of the Classes are so numerous and geographically dispersed that joinder of all members is impracticable. While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are thousands of members of the Classes.

3. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Classes are:

a. whether Fleet charged improper late payment fees or finance charges to mortgagees whose mortgage payments were received by Fleet on or before their due date;

b. whether Fleet's assessment of improper late payment fees or finance charges as alleged herein was deceptive or misleading;

c. whether Fleet's assessment of improper late payment fees or finance charges as alleged herein was a breach of the terms of the mortgage;

d. whether Fleet's provision of mortgagees account numbers and other related information violated the FCRA;

e. whether Fleet's provision of mortgagees account numbers and other related information violated state consumer protection laws; and

f. whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

4. Plaintiff's claims are typical of the claims of the members of the Class as Plaintiff and all other members of the Class sustained damages arising out of Defendants' wrongful conduct in violation of federal and state law as complained of herein.

5. Plaintiff will fairly and adequately protect the interests of the other members of the Class and has retained counsel competent and experienced in class action litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

6. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class members individually to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

## COUNT I

## VIOLATION OF TRUTH IN LENDING ACT

1. Plaintiffs incorporate by reference the allegations set forth in all preceding
2. Paragraphs as if fully set forth in this Count.
3. Fleet failed to disclose to the members of the class the conditions under which it
4. Imposed late payment fees and/or finance charges..
5. Said conduct violates the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*
6. As a direct and proximate result of Fleet's violation of 15 U.S.C. § 1601 *et seq.*,
7. Plaintiff and members of the Late Fee Class have suffered damages in an amount to be determined at trial.

## COUNT II

## BREACH OF CONTRACT

1. Plaintiff incorporates by reference the allegations set forth in all preceding
2. Paragraphs as if fully set forth in this Count.
3. Plaintiff holds a mortgage which was originated or serviced by Fleet and which was governed by the terms of the mortgage or Fleet's mortgage servicing agreement.
4. Pursuant to these agreements, Fleet agreed to assess late payment fees only where the Plaintiff's payments were not received by the due date stated on the monthly billing statement.
5. Fleet breached the contract and its implied duty of good faith and fair dealing by
6. Assessing late fees even where payments made by Plaintiff were received on or before the due date stated on the monthly billing statement(s).
7. Fleet's breach of contract caused Plaintiff and the Late Fee Class to suffer damages in an amount to be proven at trial.

## COUNT III

## VIOLATION OF ILLINOIS CONSUMER FRAUD ACT

1. Plaintiffs incorporate by reference the allegations set forth in all preceding

2. Paragraphs as if fully set forth in this Count.

3. The Illinois Consumer and Deceptive Practices Act, 815 I..L.C.S. 505/1 *et seq.*,

4. Provides in pertinent part as follows:

> Unfair methods of competition and unfair or deceptive acts or practices including but not limited to the use or employment of any deception, fraud, false pretense, false premise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act, approved August 5, 1965, and the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been mislead, deceived or damaged thereby.

1. Fleet's unfair acts or practices individually and collectively include, but are not

2. Limited to, (1) failing to disclose to Late Fee Class members that it assesses late payment fees even where the payments are received on or before the due date stated on monthly billing statements; and (2) failing to disclose to Membership Class members that it was sharing mortgage loan account numbers and other mortgage loan financial data with membership program sellers, and that the information Fleet shared allowed telemarketers to charge Membership Class members accounts without adequate consent.

3. As a direct and proximate cause of Fleet's violations of 815 I.L.C.S. 505/1 *et seq.*,

4. Plaintiff and members of the Late Fee Class have suffered damages in an amount to be proven at trial.

**JURY DEMAND**

Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of himself and the members of the Classes, pray for judgment as follows:

a. Declaring the action to be a proper class action and designating plaintiff as the representative thereof;

b. Award compensatory damages in favor of plaintiff and the members of the Classes against defendant sustained as a result of defendant's conduct alleged herein as well as punitive damages where appropriate;

c. Awarding injunctive and/or equitable relief prohibiting defendant from engaging in the unlawful conduct alleged herein;

d. Awarding plaintiff and members of the Classes their costs and expenses incurred in this action, including expert fees and reasonable attorneys' fees;

e. Pre- and post-judgment interest; and

f. Granting such other and further relief as the Court may deem just and proper.

Dated: February 2, 2001

Respectfully submitted,

**KAMELI & ASSOCIATES, P.C.**

By: ______________________
Taher Kameli

**KAMELI AND ASSOCIATES**
220 South State Street, #2026
Chicago, Illinois 60604
Tel: 312/427-4529

**PRONGAY AND BORDERUD**
Kevin M. Prongay
Jon W. Borderud
12121 Wilshire Boulevard, Suite 400
Los Angeles, CA 90025
Telephone: (310)207-2848

**LAW OFFICES OF JAMES V. BASHIAN, P.C.**
James V. Bashian
Oren Giskan
500 Fifth Avenue, Suite 2700
New York, NY 10110
Telephone: 212/921-4110

SENT BY: PRONGAY & BORDERUD; 3102072748; FEB-1-01 5 PM; PAGE 3/3

FEB-01-01 06:38 AM KAMELI&ASSOCIATES 1+312 427 4531

DOCKETED FEB 0 5 2001

JS 44 (Rev. 07/89)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS** MAV MIRFASIHI, on behalf of himself and all others similarly situated

**DEFENDANTS** Fleet Mortagage Corporation

01C 0722

Cat 1

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF COOK (EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT SOUTH CAROLINA (IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

JUDGE NORGLE

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
TAHIR KAMELI
KAMELI & ASSOCIATES
220 South State Street, #2026
Chicago, IL 60604/ Tel 312-427-4529

ATTORNEYS (IF KNOWN) UNKNOWN

MAGISTRATE JUDGE DENLOW

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)
☐ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only) (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Violation of federal truth in lending and federal fair credit reporting act, as amended.

**V. NATURE OF SUIT** (PLACE AN x IN ONE BOX ONLY)

CONTRACT: ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 151 Medicare Act ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholders' Suits ☐ 190 Other Contract ☐ 195 Contract Product Liability

REAL PROPERTY: ☐ 210 Land Condemnation ☐ 220 Foreclosure ☐ 230 Rent Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property

TORTS — PERSONAL INJURY: ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Employers' Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury

PERSONAL INJURY: ☐ 362 Personal Injury—Med Malpractice ☐ 365 Personal Injury—Product Liability ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY: ☐ 370 Other Fraud ☒ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability

CIVIL RIGHTS: ☐ 441 Voting ☐ 442 Employment ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights

PRISONER PETITIONS: ☐ 510 Motions to Vacate Sentence Habeas Corpus ☐ 530 General ☐ 535 Death Penalty ☐ 540 Mandamus & Other ☐ 550 Civil Rights

FORFEITURE/PENALTY: ☐ 610 Agriculture ☐ 620 Other Food & Drug ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 630 Liquor Laws ☐ 640 R.R. & Truck ☐ 650 Airline Regs ☐ 660 Occupational Safety/Health ☐ 690 Other

LABOR: ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Railway Labor Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act

BANKRUPTCY: ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157

PROPERTY RIGHTS: ☐ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark

SOCIAL SECURITY: ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g))

FEDERAL TAX SUITS: ☐ 870 Taxes (U.S. Plaintiff or Defendant) ☐ 871 IRS—Third Party 26 USC 7609

OTHER STATUTES: ☐ 400 State Reapportionment ☐ 410 Antitrust ☐ 430 Banks and Banking ☐ 450 Commerce/ICC Rates/etc. ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations ☐ 810 Selective Service ☐ 850 Securities/Commodities/Exchange ☐ 875 Customer Challenge 12 USC 3410 ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 895 Freedom of Information Act ☐ 900 Appeal of Fee Determination Under Equal Access to Justice ☐ 950 Constitutionality of State Statutes ☐ 890 Other Statutory Actions

**VI. ORIGIN** (PLACE AN x IN ONE BOX ONLY)
☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT** ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $** Check YES only if demanded in complaint: **JURY DEMAND:** ☒ YES ☐ NO

**VIII. REMARKS** In response to General Rule 2.21D(2) this case ☒ is not a refiling of a previously dismissed action ☐ is a refiling of case number ______ of Judge ______

DATE 2-2-01 SIGNATURE OF ATTORNEY OF RECORD [signature]

UNITED STATES DISTRICT COURT

U.S. DISTRICT COURT CLERK
01 FEB -2 AM 9:36
FILED-ED4

1-2

SENT BY: PRONGAY & BORDERUD; 3102072748; FEB-1-01 PM; PAGE 2/3
RECEIVED: 2/ 1/01 P.02
FEB-01-01 06:39 AM KAMELI&ASOCIATES08080808 1+312 427 4531

DOCKETED
FEB 0 5 2001

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

01C 0722

In the Matter of Mav Mirfasihi vs. Fleet Mortgage Corp.

Case Number:

JUDGE NORGLE

MAGISTRATE JUDGE DENLOW

FILED-ED4
01 FEB -2 AM 9:32
CLERK
U.S. DISTRICT COURT

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff, Mav Mirfasihi

| (A) | (B) |
|---|---|
| SIGNATURE [signature] | SIGNATURE [signature] |
| NAME Kevin M. Prongay | NAME Taher Kameli |
| FIRM Prongay & Borderud | FIRM Kameli & Associates |
| STREET ADDRESS 12121 Wilshire Blvd. #400 | STREET ADDRESS 220 South State St., #2026 |
| CITY/STATE/ZIP LA., CA 90025 | CITY/STATE/ZIP Chicago IL, 60604 |
| TELEPHONE NUMBER 310-207-2848 | TELEPHONE NUMBER 312-427-4529 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE [signature] | SIGNATURE [signature] |
| NAME John W. Borderud | NAME Oren Giskan |
| FIRM Prongay & Borderud | FIRM Law Office of James Bashian P.C. |
| STREET ADDRESS 12121 Wilshire BL #400 | STREET ADDRESS 500 Fifth Ave. #2700 |
| CITY/STATE/ZIP LA CA 90025 | CITY/STATE/ZIP New York NY 10110 |
| TELEPHONE NUMBER 310-207-2848 | TELEPHONE NUMBER 212-921-4110 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.

1-3