

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MAV MIRFASIHI, on behalf of himself and all others similarly situated,<br><br>    Plaintiffs,<br><br>           vs.<br><br>FLEET MORTGAGE CORPORATION,<br><br>    Defendant,<br><br>ANGELA PERRY and MICHAEL E. GREEN,<br><br>    Intervenors. | Case No. 01 C 722<br>Judge Joan H. Lefkow |

## MEMORANDUM DECISION

Presently before the court in this putative class action are plaintiff Mav Mirfasihi's ("Mirfasihi"), on behalf of himself and all others similarly situated, and defendant Fleet Mortgage Corporation's ("FMC") Joint Motion for Final Approval of Class Action Settlement and Award of Attorneys' Fees and Expenses,[1] Intervenors Michael E. Green's ("Green") and Angela Perry's ("Perry") Objections to the Second Proposed Class Action Settlement, and Green's and Perry's

---

[1] As noted in the joint motion, the proposed Final Settlement Agreement purports to settle several other actions pending in various jurisdictions around the country. These actions are (1) a putative class action lawsuit pending in Minnesota state court, captioned *Fyhrie* v. *Fleet Mortgage Corp.*, No. CX-01-438 ("the *Fyhrie* action"); (2) a putative class action lawsuit in Maryland state court, captioned *Gates* v. *Fleet Mortgage Corp.*, No. CA-01-168 ("the *Gates* action"); and (3) a putative class action lawsuit in Wisconsin state court, captioned *Burke* v. *Washington Mutual Home Loans, Inc.*, No. 02 CV 00085 ("the *Burke* action").

The parties in two other actions, captioned *State of Minnesota* v. *Fleet Mortgage Corp.*, No. 01-CV-0048 (D. Minn.) ("the Minnesota action"), and *Koluncich* v. *Fleet Mortgage Corp.*, No. RCV 052783 (Super. Ct., San Bernadino City, Calif.) ("the California action"), settled separately and have received final approval from their respective courts.

A fifth suit, *Lassman* v. *Fleet Mortgage Corp.*, No. 01-4806 ("the *Lassman* action"), is a putative class action pending in the Superior Court for the Commonwealth of Massachusetts. The *Lassman* action is not being settled as a part of the proposed settlement agreement.

Federal Rule of Civil Procedure 23(g) Motion to Appoint Them Class Representatives and Appoint Their Counsel as Class Counsel. For the reasons stated below, the court grants the joint motion approving the final class action settlement and award of attorneys' fees and expenses, overrules Green's and Perry's objections to the final class action settlement, and denies Green's and Perry's motion to appoint them class representatives and appoint their counsel as class counsel.

## I.    BACKGROUND

Although the parties are familiar with the history of the proceedings in this case, the court finds it necessary to provide a brief recap of this history in order to present its decision in the proper context. This lawsuit was brought on behalf of approximately 1.6 million persons whose home mortgages were owned by FMC. *Mirfasihi* v. *Fleet Mortgage Corp.*, 356 F.3d 781, 782 (7th Cir. 2004). Plaintiffs allege that, without their permission, FMC transmitted information regarding their financial needs that it had obtained from the mortgage papers to telemarketing companies. *Id.* Thereafter, in conjunction with FMC, the telemarketing companies used that information and deceptive practices to sell unwanted financial services to those customers. *Id.* In the present action, plaintiffs allege that FMC's conduct violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6102, and state consumer protection laws and state common law protections against invasions of privacy.

A.    Initial Settlement Agreement and Approval by the District Court

The parties entered into settlement negotiations and reached an agreement, which the district court approved. By approving the settlement agreement, the district court certified two classes for purposes of settlement, consisting of "the telemarketing class" (approximately 190,000 members)

and "the information-sharing class" (approximately 1.4 million members). The telemarketing class consisted of (1) FMC customers outside of Minnesota and California who were billed on their mortgage account statements and paid for a telemarketed membership product or service and (2) all FMC customers nationwide who were billed and paid for a telemarketed accidental death insurance policy and did not consent to such charges. The information-sharing class was comprised of all FMC customers whose mortgage information was shared with unaffiliated third parties in order to allow those parties to offer products, services, or insurance to FMC customers in the six years preceding the filing of this lawsuit. The telemarketing class received individual notice of the original settlement, while the information-sharing class received notice of the original settlement by the publication of a notice in *USA Weekend*.

In the settlement agreement, the telemarketing class was to receive $2.63 million (including $243,000 representing the profit FMC made on the challenged conduct) distributed in amounts ranging from $10 to $135, depending on the individual transactions with telemarketers who allegedly received the class members' contact and financial information from FMC. The $2.63 million was an amount sufficient to provide $135 to almost every class member, assuming that all qualified for the maximum and all made claims. The settlement also provided that all unclaimed funds would revert to FMC. An additional $750,000 would compensate class counsel. The settlement agreement did not provide for injunctive relief, although FMC had sold its mortgage business to Washington Mutual and could no longer offend as alleged. For the information-sharing class, however, the settlement provided (in the Seventh Circuit's parlance) "a big fat zero."

After reviewing the original settlement agreement, Green and Perry raised a number of objections to the agreement, arguing that it was constitutionally defective because (1) notice was

defective, specifically, the information-sharing class did not receive individual notice; (2) one class benefitted to the detriment of the other class; (3) the district court failed to value the settlement; and (4) the settlement breached a fiduciary duty owed to the classes by depriving absent class members of timely, material information about that settlement.[2] Despite these objections, the district court approved the original settlement agreement. In addition, the district court entered an order requiring any objector appealing its approval of the original settlement to post a $3.15 million bond. The Seventh Circuit subsequently vacated the bond, finding that there was no basis for the district court's concern that if the settlement were delayed, FMC would lose the ability to pay the amounts that it had agreed to pay in the settlement. 356 F.3d at 782.

B.     The Seventh Circuit's Opinion

On appeal, the Seventh Circuit focused its analysis of the original settlement agreement "on the fact that one of the classes, namely the pure information-sharing class, received absolutely nothing, while surrendering all of its members' claims against [FMC]." *Id.* The Seventh Circuit identified a number of warning signs contained in the settlement agreement: (1) the failure of the district court to analyze the settlement value of the claims of the information-sharing class, *id.* at 783; (2) the payment of FMC's disgorged profits in the amount of $243,000 to the telemarketing class despite the fact that the profits appeared to have come from members of the information-sharing class, *id.*; (3) the reversion of the unclaimed portion of the $2.4 million to FMC, *id.*, (4) the

_____

[2]As this court recognized previously, Green and Perry appealed the district court's decision dismissing Perry's objections because they had not been timely served and denying Green's motion to intervene for a variety of reasons, including that the motion coming at the time for approval of a settlement was too late, the opt-out and notice procedures were fair, and Green's interest would not be impaired by the settlement. Since Green's and Perry's appeal included these issues but the opinion of the Seventh Circuit did not address them, this court inferred that the district court's discretionary rulings were not unreasonable. *See Mirfasihi* v. *Fleet Mortgate Corp.*, No. 01 C 722, 2004 U.S. Dist. LEXIS 23460, at *5 (N.D. Ill. Nov. 17, 2004).

4

approval of the "handsome fee for the class lawyers" in the amount of $750,000, despite the meagerness of the relief provided in the settlement agreement, *id.*; (5) the fact that the information-sharing class did not have separate counsel from the telemarketing class, *id.* at 785; and (5) the failure of the notice of settlement to inform members of the information-sharing class of the *Lassman* action pending in Massachusetts state court unless they opted out of the settlement. *Id.* The Seventh Circuit cautioned, however, that it was not suggesting "that deletion of the reversion provision, or notice of the Massachusetts suit, or even the award of some relief for the information class, were *per se* requirements of an acceptable settlement." *Id.*

In identifying these warning signs, the Seventh Circuit emphasized that "the district judge's duty in a class action settlement situation [is] to estimate the litigation value of the claims of the class and determine whether the settlement is a reasonable approximation of that claim." *Id.* at 786 (citations omitted). The court hypothesized that if each of the 1.4 million members of the information-sharing class could expect a damages award of $25, the total damages of the class would be $35 million. *Id.* at 783. At the same time, the court recognized that the per capita damages of the information-sharing class might turn out to be too low to cover the costs of distribution or might cover them so thinly as to be disproportionate to the net distribution. *Id.* The district court, however, had failed to estimate the value of the legal claims of the information-sharing class, and, as a result, the Seventh Circuit held that the settlement could not stand. *Id.* The Seventh Circuit then went on to reject the argument of Green and Perry that the information-sharing class were entitled to individual notice. *Id.* at 785.

C.    Intervention and Negotiations Following Remand

The lawsuit was reassigned to this court following the Seventh Circuit's order reversing the

district court and remanding the matter for further proceedings consistent with its opinion. Green and Perry then moved to intervene in the lawsuit, not only to present their claims but to substitute themselves as class representatives and their counsel, Adkins, Kelston & Zavez, P.C. ("AKZ"), as lead counsel on the basis that the existing class counsel have demonstrated themselves inadequate to represent the information sharing class. 2004 U.S. Dist. LEXIS 23460, at *4-5. This court granted Green and Perry's motion to intervene because the interest of the putative class would be served by their participation but declined to rule on who is a proper class representative and which lawyers should represent the class. 2004 U.S. Dist. LEXIS 23460, at *7.

After granting the motion to intervene, this court ordered plaintiffs, FMC, Green, and Perry to attend a settlement conference with a magistrate judge. The settlement conference did not yield a settlement. Plaintiffs, FMC, and counsel for Green and Perry subsequently participated in a mediation. During the settlement conference and mediation, the information-sharing class was represented by separate counsel. At the mediation, plaintiffs and FMC reached the settlement agreement for which they seek the court's approval in the present motion. Green and Perry opposed the settlement agreement and have presented their objections to the court.

## II. GREEN'S AND PERRY'S RULE 23(g) MOTION TO APPOINT THEM CLASS REPRESENTATIVES AND APPOINT THEIR COUNSEL AS CLASS COUNSEL

Before reaching the merits of the settlement agreement, the court will address Green's and Perry's Rule 23(g) motion to appoint them class representatives and to appoint their counsel as class counsel. Without specifying which class they seek to represent, Green and Perry argue that the settling plaintiffs and their counsel do not adequately represent the interests of the class because they repeatedly breached their fiduciary duties to the class and because their own involvement in this case shows that they should represent the class. As it noted previously, the court has not certified any

6

classes in this litigation, not has it made a determination that the existing plaintiff is an adequate class representative or that putative lead counsel is suitable. 2004 U.S. Dist. LEXIS 23460, at *7. Green and Perry have not moved the court to certify a class, nor have they presented grounds for certifying a class with Green and Perry as representatives in the event that the court rejects the proposed settlement agreement. *See* Rule 23(a), Fed. R. Civ. P. Moreover, while Rule 23(g) contemplates the appointment of interim counsel, it is unnecessary for such counsel to be appointed in this case because, as discussed below, the court is approving the proposed settlement agreement. Accordingly, Green's and Perry's Rule 23(g) motion is denied.

## III.    CLASS ACTION SETTLEMENT

Turning now to the terms of the proposed settlement agreement, the court must "give careful scrutiny to the terms" of the proposed settlement "in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi*, 356 F.3d at 785, citing *Uhl* v. *Thoroughbread Technology & Telecommunications, Inc.*, 309 F.3d 978, 985 (7th Cir. 2002); *Culver* v. *City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002); *In re Cendant Corp. Litigation*, 264 F.3d 201, 231 (3d Cir. 2001); *Grant* v. *Bethlehem Steel Corp.*, 823 F. 2d 20, 23 (2d Cir. 1987). The court will approve a class settlement if it is "lawful, fair, reasonable and adequate." *Isby* v. *Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In evaluating the proposed settlement, the court may consider the following factors: (1) the strength of the case for the plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery to

7

be completed; and (9) the public interest. *ACLU of Ill.* v. *U. S. Gen. Serv. Admin.*, 235 F. Supp. 2d 816 at 818 (N.D. Ill. 2002).

A. Proposed Settlement of the Information-Sharing Class[3]

Under the terms of the proposed settlement agreement, the information-sharing class is defined in the same manner as approved by the district court previously and left undisturbed by the Seventh Circuit on appeal.[4] FMC has agreed to disgorge the $243,000 it received from selling the information to unaffiliated third parties. FMC also has agreed to make a charitable contribution in that amount to the Electronic Privacy Information Center, a public interest research center devoted to privacy education and protection, and/or one or more other charitable institutions devoted to consumer privacy concerns to be determined by mutual agreement of the parties and approved by the court. The information-sharing class will not receive a direct payment in any form. No new notice was provided to members of the information-sharing class regarding the proposed settlement agreement.

B. Proposed Settlement for the Telemarketing Class

In the proposed settlement agreement, the telemarketing class is defined in an almost identical manner to the definition approved by the district court and left undisturbed by the Seventh

---

[3]In its discussion of the proposed settlement agreement, the court refers to both the information-sharing class and the telemarketing class for purposes of clarity only. Such references are not an implicit certification of the classes.

[4]The information-sharing class consists of all persons whose mortgage information was shared with unaffiliated third parties to allow those parties to offer products, services or insurance to FMC customers in the six years preceding the filing of this lawsuit. The information-sharing class shall not include present and former employees of FMC and FleetBoston Financial Corp., and shall not include individuals with mailing and property addresses in California.

Circuit.[5] This agreement also includes a provision for opt-out claimants, who are deemed to have waived any and all claims to any relief provided for by the settlement, who will not be bound by any release of claims provided for in the settlement, and will not be bound by any final judgment that may result from approval of the settlement.

The proposed settlement agreement affords those members of the telemarketing class who previously submitted a timely Claim Form in connection with the original settlement the following:

(1)     Any member of the telemarketing class who certified that he or she did not consent to enrollment in a membership product or service offered by telemarketing or accidental death insurance policy offered by telemarketing, and was still being charged for such a product, service or policy, may cancel the product, service, or policy without penalty.

(2)     Any member of the telemarketing class who certified that he or she did not consent to enrollment in a membership product or service offered by telemarketing, and was charged for a membership product or service for less than six months, will receive a refund of $10.

(3)     Any member of the telemarketing class who certified that he or she did not consent to enrollment in a membership product or service offered by telemarketing and was charged for a membership product or service for more than six months, will receive a refund of 25% of the monthly charges for each month enrolled up to 18 months.

---

[5]The telemarketing class is comprised of the following: (1) all FMC Customers outside of Minnesota and California who were billed on their mortgage account statements and paid for a telemarketed membership product or service and did not consent to such charges, and (2) all FMC Customers nationwide who were billed on their mortgage account statements and paid for a telemarketed accidental death insurance policy, and did not consent to such charges. The telemarketing class shall not include present and former employees of FMC and FleetBoston Financial Corp. FMC has represented that it has made its best efforts to identify all individuals from its records who were charged for and paid for the aforementioned products.

9

Under this formula, the maximum refund for any single product is estimated to be $135.

(4)     Any member of the telemarketing class who certified that he or she did not consent to the purchase of an accidental death insurance policy offered by telemarketing, and was charged for accidental death insurance for less than one year, will receive a refund of $12.50

(5)     Any member of the telemarketing class who certified that he or she did not consent to the purchase of accidental death insurance offered by telemarketing, and was charged for accidental death insurance for more than one year, will receive a refund of $25.

Under the terms of the agreement, FMC's total maximum payment under the various provisions is $2.4 million, which is exclusive of fees and expenses. The agreement provides that the balance will be paid to the Electronic Privacy Information Center and/or one or more other charitable institutions devoted to consumer privacy concerns. The balance will be determined by subtracting all the amounts FMC paid to settle the California action, including class counsels' fees and expenses. FMC has represented that this amount is $304,696. The balance will be determined further by subtracting any amounts paid to satisfy the claims of any class members, including class counsels' fees, any class notice, and costs, whether in the present litigation or otherwise. There will be no reversion of any portion of the $2.4 million to FMC.

Excluded from entitlement to any payment are any FMC customers who, prior to the settlement, received a full refund for any amounts paid for a telemarketed membership product or service or telemarketed accidental death insurance policy, as well as present and former FMC

customers with addresses in Minnesota and California who received any refund for membership fees pursuant to the settlement agreements in the Minnesota action and the California action, respectively. In addition, any FMC customer who already received a partial refund for any amounts paid for a telemarketed membership product or service or telemarketed accidental death insurance policy, will have any refund under the settlement agreement reduced by the amount of the past refund. No new notice was provided to members of the telemarketing class regarding the proposed settlement agreement.

C.     Analysis of the Proposed Settlement

1.     The Strength of the Information-Sharing Class's Claims on Their Merits

Of the nine factors for evaluating a settlement agreement identified above, the most important factor is generally the first: the strength of the case for the plaintiffs on the merits, balanced against the amount offered in settlement. *Armstrong* v. *Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzen* v. *Andreas*, 134 F.3d 873 (7th Cir. 1998).

Here, the question before the court is what is the value of the claims of the members of the information-sharing class if they suffered no actual damages and the shared information was already publicly available. Although their mortgage information was disclosed to third parties, none of the members of the information-sharing class suffered actual damages. Green and Perry implicitly concede this point in arguing that the Massachusetts Consumer Protection Statute, MASS. GEN. LAWS. ch. 93A, § 9 (2005) ("Chapter 93A"), does not require plaintiffs to prove a monetary loss in order to recover statutory damages as long as they suffered an injury. In addition, the information that FMC shared with third parties was already a matter of public record.

Essentially, FMC values the claims of the information-sharing class at zero because none of

11

the individual members of the information-sharing class would recover any amount under the terms of the settlement agreement. Instead, FMC values settling the claims of the information-sharing class at $243,000, representing the profits it earned in sharing the members' information with third-parties. FMC argues that the weakness of plaintiffs' claims supports the fairness of this settlement. Because none of the members of the information-sharing class suffered actual damages, FMC further asserts that plaintiffs will not be able to recover even statutory minimum damages. Moreover, FMC argues that plaintiffs would face significant challenges to the certification of any litigation class in this case. In agreeing to the proposed settlement agreement, plaintiffs have recognized these problems, as well as other risks, in further pursuing their asserted claims.

Green and Perry, by contrast, value the claims of the information-sharing class at a much higher amount: at least $35 million. Citing to Chapter 93A, Green and Perry contend that each of the approximately 1.4 million members of the information-sharing class would be entitled to "actual damages or twenty-five dollars, whichever is greater." Green and Perry further assert that they now have additional claims against FMC and FleetBoston Financial Corporation, FMC's parent corporation, that would entitle members of the information-sharing class to at least a doubling but no more than a trebling of their damages, potentially amounting to damages in the amount of $105 million. Green and Perry further assert that because FleetBoston has its principal place of business in Boston, Massachusetts, a claim for a violation of Chapter 93A may be brought on behalf of every member of the information-sharing class.

As ably demonstrated by FMC, Green's and Perry's arguments and assertion of prospective damages of at least $35 million fail for a number of reasons. First, as conceded by plaintiffs and Green and Perry, the information that FMC shared with third parties was a matter of public record.

This concession likely precludes a successful claim for a violation of privacy. *See, e.g., Dwyer* v. *American Express Co.*, 652 N.E.2d 1351, 273 Ill. App. 3d 742, 210 Ill. Dec. 375 (Ill. App. Ct. 1995) (credit card company's practice of renting lists of their customers' shopping tendencies that it compiled from its own records to third parties did not constitute an invasion of privacy). Indeed, Green admitted during his deposition that he was aware that FMC would share certain information about him with third parties and admitted that FMC disclosed this fact in its Privacy Principles.[6]

Second, any attempt to have the information-sharing class certified as a litigation class may prove futile, as demonstrated by the denial of motion for class certification in the *Gates* action. A nationwide class "poses serious problems about the choice of law, the manageability of the suit, and thus the propriety of class certification." *Szabo* v. *Bridgeport Machs., Inc.*, 249 F.3d 672 at 674 (7th Cir. 2001). At this point, it is unclear which states' laws the court would apply to the claims of the information-sharing class since the class is comprised of consumers from different states. It appears highly unlikely that the court would be able to limit the applicable law to that of a single state, and state laws vary as to whether a plaintiff may recover damages without a showing of actual damages; their limitations period; whether a private right of action exists; and whether class actions are permitted. Because "[n]o class action is proper unless all litigants are governed by the same legal rules," *In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012 at 1015 (7th Cir. 2002), it seems likely that plaintiffs' claims would fail to satisfy the commonality requirement of Fed. R. Civ. P. 23. *Id.*

---

[6]Green and Perry argue that because the present action and the Massachusetts action survived motions to dismiss, the information-sharing class's claims have merit. This argument fails to recognize the purpose of a motion to dismiss, which is to test the sufficiency of the complaint and whether it provides notice of the plaintiff's claims to the defendant. *See* Rule 12(b)(6), Fed. R. Civ. P. A motion to dismiss does not evaluate the merits of the plaintiff's claims or assess the evidence in support of such claims.

Third, no member of the information-sharing class has alleged actual damages. A review of the consumer protection statutes in Illinois, Maryland, Massachusetts, and Wisconsin, the jurisdictions in which suits were brought by plaintiffs against FMC, reveals that parties must show both a violation of the statute *and* actual damages in order to recover under the statutes in Illinois, Maryland, and Wisconsin.[7] *See Petty* v. *Chrysler Corp.*, 799 N.E.2d 432, 343 Ill. App. 3d 815, 278 Ill. Dec. 714 (Ill. App. Ct. 2003) (plaintiff could not sustain an action under the Illinois Consumer Fraud Act where he could not show that he suffered actual damages); *Citaramanis* v. *Hallowell*, 613 A.2d 964, 328 Md. 142 (Md. 1992) (in order to recover under the Maryland Consumer Protection Act, plaintiffs must prove actual injury or loss); *Reusch* v. *Roob*, 610 N.W.2d 168, 234 Wis. 2d 270 (Wis. Ct. App. 2000) (a claim raised pursuant to the Wisconsin Consumer Act requires proof of pecuniary loss).

Green and Perry argue that members of the information-sharing class from states which have consumer protection statutes based on the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45 *et seq.*, will have a claim for a per se violation because the violation of the FTC Act constitutes a violation of the state consumer protection statute. This argument ignores the problem identified by FMC: most states require the plaintiff to prove that they suffered damages or an actual injury as a result of the defendant's violation of the consumer protection statute. The fact that a per se violation occurred does not necessarily entitle plaintiffs to damages.

As recognized by Green and Perry, however, Chapter 93A does not require proof of actual damages in order to recover statutory damages. *See Aspinall* v. *Philip Morris Cos., Inc.*, 813 N.E.2d

---

[7]The court notes that the FMC reached a settlement with the Minnesota Attorney General that provided payments to FMC customers in Minnesota who claimed that they were improperly charged for and paid for telemarketed membership programs. The Minnesota Attorney General determined that no remedy was warranted for claims based on alleged violations of privacy.

14

476 at 490, 442 Mass. 381 (Mass. 2004) (commenting that "[i]n the event that the plaintiffs are unsuccessful in the attempt to prove actual damages, however, they will be entitled to recover statutory damages under [Chapter 93A]"). While this comment was dicta, the Massachusetts Supreme Judicial Court cited with approval to its earlier decision in *Leardi* v. *Brown*, 474 N.E.2d 1094, 394 Mass. 151 (Mass. 1985), which held that Chapter 93A "creates a legal right, the invasion of which, without more, constitutes an injury, and under circumstances where there has been an invasion of a legally protected interest, but no harm for which actual damages can be awarded . . . the statute provides for the recovery of minimum damages in the amount of [twenty-five dollars]." *Id.* at 491, quoting *Leardi.*, 474 N.E.2d at 1101. The proposed settlement agreement, however, does not purport to settle the *Lassman* action, which is currently pending in Massachusetts state court. Green and Perry also have not identified any basis for which the court would apply Massachusetts state law to the original claims of all members of the information-sharing class, and it is likely that no such basis exists.

In an apparent recognition of this deficiency, Green and Perry have attempted to assert new claims on behalf of all members of the information-sharing class pursuant to Chapter 93A. Green and Perry argue that FMC harmed members of the information-sharing class and violated Chapter 93A by attempting to settle the present matter in a manner that violated due process and was substantively unfair. Specifically, Green and Perry allege that FMC (1) misrepresented to the court that it could not obtain the names and addresses of the members of the information-sharing class in order to avoid giving individual notice; (2) tried to use money owed to the information-sharing class to settle the claims of the telemarketing class; and (3) misled the district court into believing that the $3.15 million appeal bond was necessary based on its misrepresentation that it might be unable to

15

pay the settlement if payment was delayed by an appeal. These new claims will not entitle members of the information-sharing class to relief.

First, Green and Perry have not identified any injury from these alleged acts, and, as addressed above, it is necessary to allege an injury in order to maintain an action under Chapter 93A. Second, Green and Perry previously raised these objections to the settlement agreement. The Seventh Circuit sustained some of these objections while rejecting others. In particular, the Seventh Circuit expressly rejected Green's and Perry's argument that notice to the members of the information-sharing class was deficient because FMC misrepresented to the court that it could not locate the members' names and addresses. The Seventh Circuit also did not hold that the settlement was unfair; it held that the settlement could not stand because the district court had failed to estimate the value of the legal claims of the information-sharing class. Moreover, there is no legal basis for Green's and Perry's new Chapter 93A claim based on an appeals bond ordered by the district court. Green and Perry were able to notice an appeal and have their appeal heard and ruled on by the Seventh Circuit without posting a bond. As a result, Green and Perry were not injured by the district court's order, and the Seventh Circuit simply vacated the bond. Third, Green and Perry have made no showing that a court would certify a class to litigate these new claims. Although FMC has agreed to the certification of classes for purposes of settlement, FMC has not agreed to the certification of a class based on entirely new claims and, consequently, is not estopped from arguing against certification of such a class. Finally, these claims are essentially a collateral attack on the present action. Such an attack or a second complaint is an improper vehicle for challenging a court's order or decision. *See Fed. Election Comm'n* v. *Al Salvi for Senate Comm.*, 205 F.3d 1015, 1020 (7th Cir. 2000), citing *Hudson* v. *Hodge*, 27 F.3d 274, 276 (7th Cir. 1994) (a plaintiff "cannot use a new suit

to contend that the disposition of the first was mistaken").

After reviewing the claims of the information-sharing class, as well as applicable statutes and relevant case law, the court finds that the claims of the information-sharing class are worth a minimal amount because the members of the information-sharing class have suffered no damages; their financial information was publicly available; and it is unlikely that the court would certify a litigation class. In light of the weakness of the information-sharing class's case on its merits, the payment of $243,000 to the Electronic Privacy Information Center is a fair and reasonable settlement of the information-sharing class's claims. By disgorging FMC of its profits and by paying $243,000 to an organization that specializes in the education and protection of privacy rights, plaintiffs and FMC have crafted a settlement that will prevent FMC from profiting from its disclosure of plaintiffs' financial information and support a program that is likely to benefit members of the class in helping to protect their privacy interests. In addition, the payment of the claims of the telemarketing class has no bearing on the disgorgement of revenue to charity. As a consequence, the parties are not vying for a share of a capped fund, and is the telemarketing class is not benefitting to the detriment of the information-sharing class.

2.    Strength of the Telemarketing Class's Claims on Their Merits

Like the information-sharing class, the telemarketing class would face significant challenges in further litigating this lawsuit. FMC would challenge the assertions of the members of the telemarketing class that they did not consent to buy the telemarketed membership product or service or telemarketed accidental death insurance policy with the recordings of the telephone calls in which class members voluntarily chose to enroll in these services. In addition, FMC has identified numerous bases on which to challenge any motion to certify a litigation class, including the difficulty

in applying the laws of the multiple states, the fact that each member of the telemarketing class's recorded telephone call would require analysis and each class member's understanding of the offer and billing terms would need to be examined, and the need for individualized liability determinations. As a consequence, the value of the proposed settlement for the telemarketing class is fair, reasonable, and adequate when compared with the merits of the claims of the telemarketing class.

### 3. Remaining Factors For Evaluating the Proposed Settlement

The court's examination of the remaining factors for evaluating the proposed settlement further support the court's finding that the proposed settlement agreement is fair, reasonable, and adequate. FMC's ability to pay the settlement amount is not at issue. If this suit did not settle, the parties would face complex, lengthy, and expensive litigation when considering the number of individuals involved and the number of states' whose laws are at issue. To date, plaintiffs have conducted a significant amount of factual and legal investigation and research relating to FMC's representations concerning the proposed settlement but have not engaged in formal discovery.

Considering the number of members of the information-sharing class, there has been a minimal amount of opposition to the settlement. While Green and Perry are formidable objectors, few others have raised objections. Only 37 class members have chosen to opt out of the settlement class out of approximately 1.4 million members of the information-sharing class and of approximately 200,000 members of the telemarketing class.

The court is also satisfied that the proposed settlement agreement is the product of arms-length negotiations between the parties rather than collusion. Different counsel represented the information-sharing class and the telemarketing class during the negotiations over the proposed

settlement agreement, including Mr. Cantor, who was not involved in the negotiations over the initial settlement agreement. The proposed settlement agreement was reached during a formal mediation during which the parties negotiated in an adversarial manner. In addition, it is the opinion of counsel representing both settlement classes that the settlement agreement is fair and reasonable. It also appears to be in the public interest to settle this matter sooner rather than later. Thus, the court finds that the proposed settlement is fair, reasonable, and adequate.

D.     Notice

The court further finds that it is unnecessary for the parties to re-notice the members of the telemarketing class and the information-sharing class regarding the proposed settlement, which has improved the settlement for both classes. The initial notice to both classes gave the members of each class adequate notice of the proceedings and the proposed settlement, as well as provided information regarding objecting to the settlement and opting out of the settlement. The composition of the classes has not changed since the initial notice was given. In addition, the Seventh Circuit expressly rejected Green's and Perry's arguments regarding the deficiency of the initial notice to the members of the information-sharing class, *see Mirfasihi*, 356 F.3d at 786-87, and the court sees no reason to revisit the issue here.

## IV.    CLASS CERTIFICATION

A court has broad discretion in determining whether class certification is proper. *Keele* v. *Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). Because the proposed settlement classes satisfy Rule 23, Fed. R. Civ. P., the court certifies the information-sharing class and telemarketing class for purposes of settlement only. *Amchem Products, Inc.* v. *Windsor*, 521 U.S. 591, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997) (confirming that certification of a class for settlement purposes can be appropriate but

cautioning that, with the exception of manageability, the specifications of Rule 23, Fed. R. Civ. P., must be satisfied).

Under the Federal Rules of Civil Procedure, a determination of class certification requires a two-step analysis. First, the named plaintiff must demonstrate that the action satisfies the four threshold requirements of Rule 23(a):

> (1) numerosity (the class must be so large 'that joinder of all members is impracticable'); (2) commonality (there must exist 'questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (the representative must be able to 'fairly and adequately protect the interests of the class').

*Id.* at 594; Fed. R. Civ. P. 23(a). Additionally, the action must "qualify under one of the three subsections of Rule 23(b)." *Hardin* v. *Harshbarger,* 814 F. Supp. 703, 706 (N.D. Ill. 1993). In this case, plaintiffs seek certification under subsection 23(b)(3). Rule 23(b)(3) provides that an action may be maintained as a class action if "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." When evaluating a motion for class certification, the court accepts as true the allegations made in support of certification, and does not examine the merits of the case. *Hardin,* 814 F. Supp. at 706, citing, *inter alia, Eisen* v. *Carlisle & Jacquelin,* 417 U.S. 156, 177-78, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974). The party seeking class certification bears the burden of showing that the requirements for class certification have been met. *Id.,* citing, *inter alia, Gen. Tel. Co. of Southwest* v. *Falcon,* 457 U.S. 147, 161, 73 L. Ed. 2d 740, 102 S. Ct. 2364 (1982). Failure to establish any one of the requirements precludes class certification. *Retired Chicago Police Ass'n* v. *City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993).

A.   Numerosity

Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Johnson* v. *Rohr-Ville Motors, Inc.*, 189 F.R.D. 363, 368 (N.D. Ill. 1999), citing *Swanson* v. *American Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969). The court is entitled to make "common-sense assumptions that support a finding of numerosity." *Gaspar* v. *Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). In this case, the proposed information-sharing class consists of approximately 1.4 million members, and the telemarketing class consists of approximately 190,000 members, rendering joinder of all class members impracticable. Accordingly, the court finds that the numerosity requirement of Rule 23(a)(1), Fed. R. Civ. P,. is satisfied.

B.   Commonality

To meet the commonality requirement, "there must exist 'questions of law or fact' common to the class.'" *Keele*, 149 F.3d at 594; Fed. R. Civ. P. 23(a)(2); *see also, Tylka* v. *Gerber Prods. Co.*, 178 F.R.D. 493, 496 (N.D. Ill. 1998) (noting that if at least one question of law or fact is common to the class, then commonality is satisfied). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele*, 149 F.3d at 594 (citation omitted). A common nucleus of operative fact exists where "defendants have engaged in standardized conduct toward members of the proposed class." *Id.* "[T]he commonality requirement has been characterized as a 'low hurdle' easily surmounted." *Scholes* v. *Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

The court finds that there are questions of both law and fact common to members of the information-sharing class and the telemarketing class. The members of the information-sharing class

assert that FMC violated their privacy interests and state consumer protection laws by disclosing their financial information to third parties. The members of the telemarketing class assert that FMC's telemarketing of products and services was misleading. There is also the common question of whether the members of either class suffered damages and the appropriate measure of such damages. Thus, Rule 23(a)(2) is satisfied.

C.    Typicality

To meet the typicality requirement, the named plaintiff's claims or defenses must be "typical . . . of the class." *Keele*, 149 F.3d at 594; Fed. R. Civ. P. 23(a)(3). The typicality requirement, although closely related to the commonality question, focuses on the class representative. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.* at 595 (citing *De La Fuente* v. *Stoekly-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar*, 167 F.R.D. at 57.

In this case, each class representative's claims are based on the same legal theories and arise from the same events and practices on which the claims of all members of the settlement classes are based. The claims of the information-sharing class representatives, Mirfasihi, Lawrence Fyhrie, Carolyn Fyhrie, Troy Fyhrie, Todd Fyhrie, and Robert L. Gates, allege the same conduct as giving rise to all of their claims, that FMC improperly shared and sold their private mortgage information with third parties. Similarly, Paul J. Burke and Donna B. Burke, the class representatives for the telemarketing class, allege that FMC engaged in misleading telemarketing of products and services, which is the same allegation as the other members of the telemarketing class. As a result, Rule

22

23(a)(3) is satisfied.

D.    Adequacy of Representation

To meet the adequacy of representation requirement, "the representative must be able to fairly and adequately protect the interests of the class." *Keele*, 149 F.3d at 594; Fed. R. Civ. P. 23(a)(4). Under Rule 23(a)(4), the adequacy of representation determination "is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (quotation omitted).

The court finds that counsel for the two classes have fairly and adequately represented the interests of the classes. Counsel have participated in arms-length, adversarial negotiations in order to arrive at the settlement that is best for the information-sharing class and the telemarketing class. They have thoroughly examined the claims of the classes and properly assessed the settlement value of the claims for the classes. Additionally, each class has had its own representation during the course of the negotiations following the remand from the Seventh Circuit. Counsel for each class have recognized and protected the different and distinct interests of the class members. Thus, Rule 23(a)(4) is satisfied.

E.    Rule 23(b)

Plaintiffs seek certification under Rule 23(b)(3). That section provides that a class action can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The members of both settlement classes have a common grievance arising out of a common set of operative facts: FMC's disclosure

of their mortgage information with third parties and its resulting unjust enrichment. The telemarketing class further asserts that FMC participated in the misleading telemarketing of products. As a result, the court is persuaded that questions common to the members of the class predominate over individual concerns. The court also finds that a class action is superior to other available methods for the fair and efficient settlement of the lawsuit. This case involves approximately 1.6 million individuals who are likely to be geographically dispersed. Many of these individuals are also likely to have relatively small claims making it expensive to seek recovery through individual litigation. A class action would be the most efficient use of judicial resources in resolving the common issues alleged in this action. Thus, the court finds that both the predominance and superiority factors under Rule 23(b)(3) are satisfied.

## V. ATTORNEYS' FEES AND EXPENSES

Plaintiffs have agreed to accept the same amount in attorneys' fees and expenses as the amount agreed to in the original settlement agreement, $750,000, an amount that FMC has agreed to pay. Counsel for plaintiffs have represented that their combined lodestar fees were $820,175.49 and their incurred expenses were $13,006.52 as of November 20, 2002. Counsel have further represented that their present fees and expenses exceed the 2002 figures by a substantial margin. As demonstrated by counsel for plaintiffs, the agreed amount is a reasonable amount under both the lode-star and percentage-of-funds methods. Accordingly, the court awards attorneys' fees and expenses in the amount of $750,000 to class counsel.

## ORDER

For the reasons stated above, the court approves the proposed settlement [#146] and overrules Green's and Perry's objections to the revised class action settlement and award of attorneys' fees and expenses. The court also denies Green's and Perry's motion to appoint them class representatives and appoint their counsel as class counsel [#158].

The court appoints Jon W. Boderud as class counsel for the information-sharing class. The court appoints Clifford A. Cantor as class counsel for the telemarketing class. The court awards attorneys' fees and expenses to class counsel in the amount of $750,000.

The court specifically reserves jurisdiction, without affecting the finality of this judgment, over (a) the implementation and administration of the settlement agreement and the enforcement of all terms and conditions of the settlement agreement; (b) the allowance, disallowance, or adjustment of any settlement class member's claim with respect to benefits being provided to members of the settlement classes; (c) the distribution of settlement benefits to members of the settlement classes; (d) enforcing and administering this judgment; (e) enforcing and administering the settlement agreement, including any releases executed in connection therewith; and (f) all other matters related to or ancillary to the forgoing.

This case is dismissed with prejudice.

ENTER: _____

Dated: August 11, 2005

JOAN HUMPHREY LEFKOW
United States District Judge

25