**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MAV MIRFASIHI, on behalf of himself and all others similarly situated,** )<br>)<br>**Plaintiffs,** )<br>)<br>vs. )<br>)<br>**FLEET MORTGAGE CORPORATION,** )<br>)<br>**Defendant,** )<br>)<br>**ANGELA PERRY and MICHAEL E. GREEN,** )<br>)<br>**Intervenors.** ) | **Case No. 01 C 722**<br>**Judge Joan H. Lefkow** |

**MEMORANDUM DECISION**

This is the third time that a proposed settlement of this putative class action case is before the district court for approval. The parties are plaintiff Mav Mirfasihi on behalf of himself and all others similarly situated ("plaintiffs") and defendant Fleet Mortgage Corporation ("FMC"). The first time a settlement was before the court was in 2002, when Judge Norgle approved the original settlement. Dkt. No. 88 (Dec. 4, 2002). The Seventh Circuit reversed and remanded the case on January 29, 2004. *Mirfasihi* v. *Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004) ("*Mirfasihi I*"). On remand, this court granted the motion of Angela Perry and Michael E. Green ("the intervenors") to intervene. Dkt. No. 122 (Nov. 17, 2004). The parties returned to the bargaining table and came up with the Second Proposed Class Action Settlement ("the Settlement"), which this court approved on August 11, 2005. Mem. Decision, Dkt. No. 170 (Aug. 11, 2005). That decision was appealed as well and the Seventh Circuit again reversed and remanded, although this time the scope of remand has been narrowed to a single issue: to fully

1

consider the potential value of the claims of one of the putative classes (the "information-sharing class"). *Mirfasihi* v. *Fleet Mortgage Corp.*, 450 F.3d 745 (7th Cir. 2006) ("*Mirfasihi II*"). The intervenors have filed another objection to the Settlement. Class Members and Twice-Prevailing Objectors Michael Green and Angela Perry's Second Objection to the Second Proposed Class Action Settlement [Dkt. No. 195] ("Second Objection"). For the reasons that follow, the Second Proposed Class Action Settlement [#146] is again approved and the intervenors' Second Objection [#195) is denied.

**I.     Background**

The court assumes familiarity with its August 11, 2005 Memorandum Decision and with the proceedings of this case and provides the following background only to give the necessary context for this opinion. This lawsuit was brought on behalf of approximately 1.6 million people whose home mortgages were owned by Fleet Mortgage Corporation ("FMC"). *Mirfasihi I*, 356 F.3d 781, 782 (7th Cir. 2004). Plaintiffs allege that, without their permission, FMC transmitted information that it had obtained from the mortgage papers regarding their financial needs to telemarketing companies which then, in conjunction with FMC, used that information and deceptive practices to attempt to sell unwanted financial services to FMC customers. *Id.* Plaintiffs allege that FMC's conduct violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6102, and state consumer protection laws and common law protections against invasions of privacy.

Judge Norgle's order certified two classes for purposes of settlement: the "telemarketing class" (approximately 190,000 members) and the "information-sharing class" (approximately 1.4

million members), and the Seventh Circuit has left these classes undisturbed. Mem. Decision of Aug. 11, 2005, at 8-9; *Mirfasihi I,* 356 F.3d at 782. The telemarketing class is composed of the following:[1] (1) all FMC customers outside of Minnesota and California who were billed on their mortgage account statements and paid for a telemarketed membership product or service and did not consent to such charges; and (2) all FMC customers nationwide who were billed on their mortgage account statements and paid for a telemarketed accidental death insurance policy and did not consent to such charges.[2] *Id.* The information-sharing class is composed of all FMC customers whose mortgage information was shared with unaffiliated third parties in order to allow those parties to offer products, services, or insurance to FMC customers in the six years preceding the filing of this lawsuit, but who did not buy anything from the telemarketers. *Id*. The telemarketing class received individual notice of the original settlement, while the information-sharing class received notice of the original settlement by the publication of a notice in *USA Weekend*. *Id*.

The basic terms of the Settlement are as follows. The telemarketing class is eligible for certain monetary relief.[3] For the information-sharing class, FMC has agreed to disgorge the

---

[1] This current definition is almost but not completely identical to the original definition. The differences are not material to this opinion.

[2] The telemarketing class does not include present and former employees of FMC and FleetBoston Financial Corp.

[3] The proposed Settlement affords those members of the telemarketing class who previously submitted a timely Claim Form in connection with the original settlement the following:

(1) Any member of the telemarketing class who certified that he or she did not consent to enrollment in a membership product or service offered by telemarketing or accidental death insurance policy offered by telemarketing, and was still being charged for such a product, service or policy, may cancel the product, service, or policy without penalty.
(2) Any member of the telemarketing class who certified that he or she did not consent to enrollment in a membership product or service offered by telemarketing, and was charged for a membership product or service for less than six months, will receive a refund of $10.

$243,000 it received from selling the information to unaffiliated third parties and to make a charitable contribution in that amount to the Electronic Privacy Information Center, a public interest research center devoted to privacy education and protection, and/or other charitable institutions devoted to consumer privacy concerns to be determined by mutual agreement of the parties and approved by the court. The information-sharing class will not receive a direct payment in any form.

FMC's maximum payment under the various provisions is $2.4 million, which is exclusive of fees and expenses. After subtracting any amounts paid to satisfy the claims of any class members, including class counsel's fees, any class notice, and costs, whether in the present litigation or otherwise, and subtracting all the amounts FMC paid to settle a related California action, including class counsel's fees and expenses,[4] the balance will be paid to the Electronic Privacy Information Center and/or other charitable institutions devoted to consumer privacy concerns. There will be no reversion of any portion of the $2.4 million to FMC.[5]

---

(3) Any member of the telemarketing class who certified that he or she did not consent to enrollment in a membership product or service offered by telemarketing and was charged for a membership product or service for more than six months, will receive a refund of 25% of the monthly charges for each month enrolled up to 18 months. Under this formula, the maximum refund for any single product is estimated to be $135.

(4) Any member of the telemarketing class who certified that he or she did not consent to the purchase of an accidental death insurance policy offered by telemarketing, and was charged for accidental death insurance for less than one year, will receive a refund of $12.50

(5) Any member of the telemarketing class who certified that he or she did not consent to the purchase of accidental death insurance offered by telemarketing, and was charged for accidental death insurance for more than one year, will receive a refund of $25.

[4] FMC has represented that this amount is $304,696.

[5] Excluded from entitlement to any payment are any FMC customers who, prior to the settlement, received a full refund for any amounts paid for a telemarketed membership product or service or telemarketed accidental death insurance policy, as well as present and former FMC customers with addresses in Minnesota and California who received any refund for membership fees pursuant to the settlement agreements in the Minnesota action and the California action, respectively. In addition, any FMC customer who already received a partial refund for any amounts paid for a telemarketed membership product or service or telemarketed accidental death insurance policy, will have any refund under the settlement agreement reduced by the amount of the past refund.

In its 2006 decision, the Seventh Circuit said that "the district court properly analyzed (and disposed of) the objectors' ... complaints not relating to the information-sharing class's claims evaluation and we need not address those issues here (nor need the district court revisit them upon remand." *Mirfasihi II*, 450 F.3d 745, 749 n.1 (7th Cir. 2006). It found, however, that this court "failed to consider with adequate specificity the reasonableness of an entire class receiving a 'big fat zero' in the settlement. Specifically, [this] court did not canvas all potential avenues of recovery to determine whether the information-sharing class's claims were indeed essentially hopeless (and thus worthless) under the pertinent controlling law." *Id*. at 747. "The analysis should have considered, at a minimum, the pertinent consumer protection statutes (and other potential bases for claims) in the states where the information-sharing class members resided." *Id*. at 749. "In any event, in basic terms, a claim analysis under these circumstances would require consideration of (1) the probability of the information-sharing class's having grounds for recovery under *any* applicable law; (2) the probability of such favorable law applying to the entire information-sharing class (rather than differing subsets); and (3) the probability of winning on the merits." *Id*. at 750. "Thus, on remand, [this] court should consider and analyze the full cross-section of potentially applicable state law and arrive at a clearer estimate of the potential value of the information-sharing class's claims to allow proper evaluation of the reasonableness of the proposed settlement." *Id*. at 751.

**II.    Analysis**

In their "Second Objection to the Second Proposed Class Action Settlement," the intervenors raise several arguments against approving the Settlement, most of which are the

same as arguments that they have raised at least once before.[6] First, they argue that the plaintiffs' claims have value because FMC's conduct constitutes a *per se* violation of all state consumer protection statutes that are based on the Federal Trade Commission Act, 15 U.S.C. § 45 *et. seq* ("FTC Act"). Second, the intervenors argue that plaintiffs' federal law claims under TILA and the FCRA have value. They suggest that the plaintiffs might have a claim under TILA based on FMC's nondisclosure of telemarketing charges on its mortgage statements to customers. The intervenors also contend that FMC violated the FCRA, arguing that FMC is a "credit reporting agency" that assembled "credit reports" and that the telemarketing firms used those reports to determine whether FMC's customers were eligible for personal insurance or credit transactions.[7] Third, the intervenors have again raised their "new" claim against FMC for attempting to settle this case "in a manner than violated due process and was substantively unfair." Second Objection, at 9. This is again based primarily on FMC's support for the requirement of an appeal bond of $3.15 million after the original settlement was approved in 2002. Finally, the intervenors complain that class counsel have a conflict of interest and that new individual class notice should be provided to the information-sharing class.

In response, FMC and the plaintiffs argue that many of the intervenors' arguments are outside the scope of the Seventh Circuit's remand. Additionally, they emphasize their key points that the information-sharing plaintiffs cannot recover because, *inter alia*, they have not suffered any actual damages and the information that FMC sold was already a matter of public record.

---

[6] In fact, some of their arguments were lifted from their first Objection to the Second Proposed Class Action Settlement, filed on June 28, 2005. Dkt. No. 157. Compare Objection, Dkt. No. 157 (June 28, 2005), at 14, with Second Objection, Dkt. No. 195 (Sept. 29, 2006), at 4.

[7] These federal law arguments are the only arguments that have not been raised before.

FMC and the plaintiffs conclude that the information-sharing plaintiffs' claims appear to be meritless, and therefore the Settlement should be approved again.

This court took the suggestion of the Seventh Circuit and "request[ed] additional briefing ... to obtain greater information and analyses pertinent to claims evaluation in this case." *Id*. at 751. Plaintiffs and FMC have each provided the court with comprehensive 50-state surveys of state consumer protection and privacy law.

### A. State consumer protection statutes

The intervenors argue that the plaintiffs' claims have value because FMC's conduct constitutes a *per se* violation of all state consumer protection statutes that are based on the FTC Act. From that premise, they conclude that the members of the information-sharing class are entitled to millions of dollars in statutory damages. As is ably shown by FMC and the plaintiffs, however, the intervenors have ignored critical elements of the consumer protection laws that defeat their class action claim for statutory damages.

Most critically, the information-sharing plaintiffs have not suffered any damages as a result of FMC's conduct. Mem. Decision, Dkt. No. 170, at 11. On the contrary, the intervenors concede that the information that FMC disclosed about the plaintiffs was already a matter of public record.[8] *Id*. In states that allow for the recovery of statutory damages in class actions (of

---

[8] The intervenors state without explanation that FMC disclosed "*nonpublic* personal and/or financial information." *See, e.g.,* Intervenors' Second Objection to the Second Proposed Class Action Settlement, at 1 (emphasis added). Similarly, they say that the information-sharing class "suffered actual money damages from the sale of its personal information as measured, for example, by disgorgement of the profits Fleet received for selling such information." *Id*. at 4; *see also Id*. at 8 n.3; 13. Profits made by FMC, however, are not a proper measure of damages to the plaintiffs in this context. Despite the fact that FMC and the plaintiffs have strongly emphasized the importance of these facts, both in the briefing that took place in 2005 and in the current set of briefs, and this court focused on the plaintiffs' lack of actual damages in its August 11, 2005 opinion approving the Settlement, *see* Memorandum Decision [Dkt. No. 170], at 11-12, 14, the intervenors have still failed to allege any concrete or specific damage or injury to any named information-sharing plaintiff. This persistent omission qualifies as a judicial

which there are only seven plus the District of Columbia), plaintiffs must still plead and prove actual injury, ascertainable loss, or damage in order to be entitled to recover statutory damages. FMC's Brief in Further Support of the Parties' Class Action Settlement After Limited Remand from the Seventh Circuit ("FMC's Brief"), at 5, Ex. A; Plaintiffs' Brief Addressing the Remanded Issue of Valuation of Information-Sharing Class Claims ("Plaintiffs' Brief"), at 7-8, Ex. 1.

Massachusetts's consumer protection law, Mass. Gen. Laws Ch. 93A, § 9, on which the intervenors rely, falls into this category. It provides, "Any person ... who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two ... may bring an action ... for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper." Mass. Gen. Laws Ch. 93A, § 9(1). "[I]f the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two." *Id*. at § 9(3). Although the Massachusetts Supreme Court case *Leardi* v. *Brown*, 394 Mass. 151, 474 N.E.2d 1094 (Mass. 1985), suggests that the information-sharing plaintiffs might have a viable claim even without proof of actual damages, later cases have made it clear

---

admission that no actual damages have occurred, which has the effect of removing the fact from contention. *Clark* v. *Robert W. Baird Co., Inc.*, 152 F. Supp. 2d 1040, 1045 (N.D. Ill. 2001) (citing *Keller* v. *United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir. 1995); *American Title Ins. Co.* v. *Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988)). The intervenors' references to the Seventh Circuit opinions and to FMC's "admissions," see Second Objection, at 4, do not stand for the propositions for which they are cited.

that Massachusetts's law requires proof of at least some loss or adverse effect, even if not economic. *See Hershenow* v. *Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 802, 840 N.E.2d 526, 535 (Mass. 2006) ("Every consumer is, of course, entitled to the full protection of law. If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss – whether that loss be economic or noneconomic – the consumer is entitled to redress under our consumer protection statute. A consumer is not, however, entitled to redress under G.L. c. 93A, where no loss has occurred. To permit otherwise is irreconcilable with the express language of G.L. c. 93A, § 9, and our earlier case law."); *see also Chapman* v. *Katz*, 448 Mass. 519, 536-37, 862 N.E.2d 735, 749 (Mass. 2007).[9]

      In this case, the intervenors (and the plaintiffs) have had ample opportunity to allege that an injury or loss occurred but have not done so. For example, no information-sharing plaintiff has alleged that he spent any time preventing or undoing any harm caused by FMC's conduct or that he was otherwise injured in any way. Because the information disclosed was already a matter of public record, there was no reason to "recover" it, and FMC's disclosure could not have caused any harm. The plaintiffs have no viable claim in Massachusetts or the states like it.

      The information-sharing plaintiffs' claims are not viable under any other state's consumer protection laws either, for various reasons. Some states do not provide statutory damages at all for violation of their consumer protection laws; some do not allow private class actions for statutory damages; and in some states, the statute of limitations has run for any potential claims that plaintiffs could make. In many states more than one of these limitations

---

[9] The court takes note of *Kuhn* v. *Capital One Fin. Corp.*, 2006 WL 3007931, 67 Mass. App. Ct. 1111 (Mass. App. Ct. Oct. 23, 2006), an unpublished opinion cited by the intervenors. The court need not decide whether this case can be relied on because in any event it is consistent with the cases cited above.

apply. *See* FMC's Brief, at 3-6, Ex. A (50 state survey); Plaintiffs' Brief, at 6-12, Ex. 1 (50 state survey). The intervenors do not challenge the accuracy of the parties' surveys and after careful and thorough review, the court finds them to be accurate, comprehensive, and very helpful and commends FMC and the plaintiffs for their work. The court therefore concludes that the information-sharing plaintiffs do not have a viable claim under any state's consumer protection law.

### B. State privacy laws and common law protections

The intervenors do not address the applicability of state privacy laws to the information-sharing class, but FMC persuasively argues that any such claims would be meritless. It is supported by the reasonable idea that "the interests in privacy fade when the information involved already appears in the public record." *Cox Broad. Corp.* v. *Cohn*, 420 U.S. 469, 494, 95 S. Ct. 1029, 43 L. Ed. 2d 328 (1975); *Connick* v. *Myers*, 461 U.S. 138, 143 n.5, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) (citing *Cox* as holding that an "action for invasion of privacy cannot be maintained when the subject-matter of the publicity is matter of public record.").

Actions for invasion of privacy take various forms but none of them fits well with the facts at issue here. The first, "publication of private facts," generally requires that the plaintiff show that the defendant gave publicity to matters concerning private life, when such publication would be highly offensive to a reasonable person, and where the facts are not of legitimate concern to the public. FMC's Brief, at 8 (citing the Restatement (Second) of Torts § 652D). Because the information that FMC disclosed was already a matter of public record, the plaintiffs cannot maintain a claim that FMC publicized private facts. *See* FMC's Brief, at 7-8, Ex. C; Restatement (Second) of Torts § 652(D) cmt. b ("There is no liability when the defendant merely

gives further publicity to information about the plaintiff that is already public. Thus there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record ..."). The second form of invasion of privacy, "intrusion upon seclusion," also does not provide the plaintiffs with a viable claim. This generally requires a showing that the defendant intruded on the plaintiffs' seclusion or private affairs in a way that would be highly offensive to a reasonable person. FMC's Brief, at 10 (citing the Restatement (Second) of Torts § 652B). As noted in the comments to the Restatement, however, and as held by many state courts, "there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection." Restatement (Second) of Torts § 652B cmt. c; *see also* FMC's Brief, at 10-11, Ex. C.

The final form of invasion of privacy, appropriation of name or likeness, requires a showing that the defendant appropriated the plaintiff's name or likeness without consent for its own benefit. FMC's Brief, at 14 (Citing Restatement (Second) of Torts § 652C). As explained in the comments to the Restatement, "[t]he common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose." Restatement (Second) of Torts § 652C cmt. b. The facts involved here, where FMC sold a list of plaintiffs' names and some financial information about them, do not fit within this paradigm; FMC did not purport to use any of plaintiffs' names or likenesses to endorse its product. There is no indication that any of plaintiffs' names were intrinsically valuable or well known; instead, the value of FMC's list was due to the fact that plaintiffs' names and information were not well known to the buyer. Furthermore, plaintiffs will have difficulty showing that FMC shared their

11

information without their consent, because they have admitted that FMC's Privacy Principles stated that FMC "may share information with [other] companies if they provide a product or service that may benefit [FMC's] customers." FMC's Brief, at 14; Mem. Decision, Dkt. No. 170, at 13. Furthermore, in 21 states, plaintiffs must also establish one or more of the following elements: (1) injury; (2) the names of the class members alone have commercial value; and (3) the names were used to promote or advertise a product or service. FMC's Brief, at 12-13. As has been discussed, plaintiffs here cannot establish any of those elements.

Because the information disclosed by FMC was a matter of public record and because plaintiffs have alleged no particular injury caused by the disclosure, plaintiffs have no reasonable prospect of recovery under any state's invasion of privacy laws.[10]

### C. Federal claims under TILA and the FCRA

FMC and plaintiffs argue that consideration of any federal claims is outside of the scope of the Seventh Circuit's remand order and therefore the court should not revisit the merits of the intervenors' arguments regarding claims under TILA or the FCRA. Because these claims are easily disposed of, the court addresses them on the merits.

First, the intervenors say, "[FMC] argues that allegations based on its charging inappropriate late fees would not state a claim under TILA, but it conveniently ignores the issue of whether it violated TILA by including undisclosed telemarketing charges on its mortgage statements to customers." The late fee issue was dropped by the plaintiffs after discovery showed that it was an isolated customer service issue specific to Mr. Mirfasihi. And there are no

---

[10] Although states' laws may vary somewhat from the language of the Restatement, none have been found by the parties or the court to vary in any material way that might allow plaintiffs to recover.

allegations that the information-sharing class incurred undisclosed telemarketing charges on their mortgage statements; that would place them into the telemarketing class.

Second, regarding the FCRA, it is sufficient to say that the information-sharing plaintiffs cannot recover because they did not suffer any actual damages. *Ruffin-Thompkins* v. *Experian Information Solutions, Inc*., 422 F.3d 603, 607 (7th Cir. 2005). Therefore, neither the FCRA nor TILA are sound bases on which the information-sharing class may assert claims.

### D. Other claims and issues

The intervenors suggest in one sentence that "[b]ecause [FMC] breached its own promises to the information-sharing class about the privacy of their information, Fleet's conduct gives rise to breach of contract and breach of fiduciary claims that could be certified on a national basis." Elsewhere, however, they have conceded that FMC disclosed in its Privacy Principles that it might share information about its customers with other companies. Mem. Decision, Dkt. No. 170, at 13. It is not clear what the intervenors are suggesting regarding this potential breach of contract action, but it appears to the court that a breach of contract claim would not be viable.

The intervenors have also once again raised the issues of the unfair settlement claim, a potential conflict of class counsel, and the need for new individual class notice. This court has previously rejected the unfair settlement claim and the allegation that class counsel is conflicted. Mem. Decision, Dkt. No. 170, at 14-15; 18-19; 23. These holdings are outside of the scope of the Seventh Circuit's remand and the intervenors have not raised any new facts that would warrant reconsideration of these issues. Finally, the Seventh Circuit has specifically held that individual class notice is not required. *Mirfasihi*, 356 F.3d at 786.

**III.     Conclusion and Order**

For all of the foregoing reasons, the court concludes that the information-sharing plaintiffs do not have any realistic prospect of recovery under any applicable law.[11] The litigation value of their claims is minimal. On the other hand, the Settlement disgorges FMC of the profits that it made selling the plaintiffs' information and requires it to pay at least $243,000 to an organization that specializes in the education and protection of privacy rights, which is likely to provide a benefit to the members of the class. *Compare Mace* v. *Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997). Therefore, the Second Proposed Class Action Settlement [# 146] is fair, reasonable, and adequate and it is again approved. The intervenor's Second Objection [# 195] is overruled. The court incorporates by reference all other holdings of its August 11, 2005 decision. This case is dismissed with prejudice.

Dated: July 17, 2007                     ENTER: _____

                                                              JOAN HUMPHREY LEFKOW
                                                              United States District Judge

---

[11] Because the court has found that the information-sharing class does not have any reasonable likelihood of recovery under any applicable law, there is no need to move on to consider whether any such law would apply to the entire class and what the likelihood would be of plaintiffs winning on the merits.