**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MAV MIRFASIHI, on behalf of himself and all others similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 01 C 722** |
| ) | **Judge Joan H. Lefkow** |
| **FLEET MORTGAGE CORPORATION,** ) | |
| ) | |
| **Defendant,** ) | |
| ) | |
| **ANGELA PERRY and MICHAEL E. GREEN,** ) | |
| ) | |
| **Intervenors.** ) | |

**MEMORANDUM DECISION**

**I.      Background**

Counsel for Michael E. Green and Angela Perry, the intervenors and objectors in this case ("intervenors"), have moved for an award of attorneys' fees and expenses for their role in producing the recently-approved settlement of this putative class action. [# 230].[1] The parties here are plaintiff Mav Mirfasihi individually and on behalf all others similarly situated ("plaintiffs") and defendant Fleet Mortgage Corporation ("FMC" or "Fleet"). The case was brought on behalf of approximately 1.6 million people whose home mortgages were owned by FMC. Plaintiffs allege that, without their permission, FMC transmitted information regarding their financial needs that it had obtained from their mortgage papers to telemarketing companies.

---

[1] Technically, they moved for a ruling on their previously filed motion for an award of attorneys' fees and expenses, which was filed on August 25, 2005, right after the court approved the Second Proposed Class Action Settlement for the first time. That motion, Docket Number 173, has been terminated, however, and the court will treat the instant motion independently, as explained below.

Thereafter, those companies used deceptive practices to sell financial services to the plaintiffs.

This case has a long history that involves two trips to the Seventh Circuit, both of which resulted in a remand for further consideration of the fairness of a proposed class settlement. For the purposes of this decision, the court assumes the reader's familiarity with the Seventh Circuit's opinion of January 29, 2004, *Mirfasihi* v. *Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004) ("*Mirfasihi I*"), this court's Memorandum Decision of August 11, 2005, Dkt. No. 170, the Seventh Circuit's opinion of July 11, 2006, Dkt. No. 187 ("*Mirfasihi II*"), and with this court's recent Memorandum Decision of July 17, 2007, in which the Second Proposed Class Action Settlement was approved (for the second time). Dkt. No. 228. Here, the court will summarize only the portions of the history of this case that are relevant to the intervenors' instant motion.

This court's decision of August 11, 2005 provides a detailed comparison of the first proposed Class Settlement ("the first settlement") and the Second Proposed Class Action Settlement ("the second settlement"). The first settlement was approved by Judge Norgle on December 4, 2002. Dkt. No. 88. It certified a nationwide settlement class, which consists of two groups known as "the telemarketing class" (190,000 members) and "the information-sharing class" (1.4 million members). In the first settlement, the telemarketing class was to receive $2.63 million distributed in amounts ranging from $10 to $135, depending on the circumstances of each plaintiff's individual transaction with the telemarketers. This amount of money would provide nearly the full $135 to each class member, assuming all qualified for the maximum and all made claims. That event being most unlikely, the settlement provided that unclaimed funds would revert to Fleet. Class counsel were to receive $750,000 from the $2.63 million fund. The first settlement provided no injunctive relief, but Fleet had sold its mortgage business and could

no longer offend as alleged. The information-sharing class, however, was to receive nothing. The $243,000 profit that Fleet made on the challenged conduct, said to be derived solely from the information-sharing class, was lumped into the $2.63 million fund.

In response to the parties' motion to approve the first settlement, Green and Perry moved to intervene and object. Dkt. No. 70. They argued, *inter alia*, that the class notice was inadequate because it failed to provide individual notice to the information-sharing class and it failed to notify the class members of a Massachusetts class action brought on their behalf against FMC. They also argued that the settlement was unfair because of the following:

- it allowed for a reversion of funds to FMC;
- it provided nothing to the information-sharing class in return for their release of claims;
- the information-sharing plaintiffs were releasing breach of contract claims;
- the information-sharing plaintiffs were releasing claims that were worth millions of dollars in statutory damages under consumer fraud statutes (including Massachusetts's statute); and
- the information-sharing plaintiffs were releasing claims under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA").

*See* Dkt. No. 70. Judge Norgle denied the motion to intervene on the grounds that it was untimely and not persuasive on its merits. Dkt. No. 89.

Green and Perry appealed the denial of their motion to intervene and the approval of the settlement. Dkt. No. 93. As summarized in this court's August 11, 2005 decision, the Seventh Circuit agreed with Green and Perry and reversed and remanded Judge Norgle's approval of the first settlement:

> On appeal, the Seventh Circuit focused its analysis of the original settlement agreement "on the fact that one of the classes, namely the pure information-sharing class, received absolutely nothing, while surrendering all of its members' claims against [FMC]." [*Mirfasihi I*, 356 F.3d at 782.] The Seventh Circuit identified a number of warning signs contained in the settlement agreement: (1) the failure of the district court to analyze the settlement value of the claims of the information-sharing class, *id.* at 783; (2) the payment of FMC's disgorged profits

3

in the amount of $243,000 to the telemarketing class despite the fact that the profits appeared to have come from members of the information-sharing class, *id.*; (3) the reversion of the unclaimed portion of the $2.4 million to FMC, *id.*; (4) the approval of the "handsome fee for the class lawyers" in the amount of $750,000, despite the meagerness of the relief provided in the settlement agreement, *id.*; (5) the fact that the information-sharing class did not have separate counsel from the telemarketing class, *id.* at 785; and (6) the failure of the notice of settlement to inform members of the information-sharing class of the action pending in Massachusetts state court. *Id.* The Seventh Circuit cautioned, however, that it was not suggesting "that deletion of the reversion provision, or notice of the Massachusetts suit, or even the award of some relief for the information[-sharing] class, were *per se* requirements of an acceptable settlement." *Id.*

In identifying these warning signs, the Seventh Circuit emphasized that "the district judge's duty in a class action settlement situation [is] to estimate the litigation value of the claims of the class and determine whether the settlement is a reasonable approximation of that claim." *Id.* at 786 (citations omitted). The court hypothesized that if each of the 1.4 million members of the information-sharing class could expect a damages award of $25 [a value which was suggested by Green and Perry to be a possibility under the Massachusetts consumer fraud statute], the total damages of the class would be $35 million. *Id.* at 783. At the same time, the court recognized that the per capita damages of the information-sharing class might turn out to be too low to cover the costs of distribution or might cover them so thinly as to be disproportionate to the net distribution. *Id.* The district court, however, had failed to estimate the value of the legal claims of the information-sharing class, and, as a result, the Seventh Circuit held that the settlement could not stand. *Id.* The Seventh Circuit then went on to reject the argument of Green and Perry that the information-sharing class [was] entitled to individual notice. *Id.* at 785.

Dkt. No. 170, at 4-5.

On remand, the case was reassigned to this court and Green and Perry were allowed to intervene. Dkt. No. 122. Plaintiffs, FMC, and the intervenors participated in a mediation where plaintiffs and FMC reached agreement on the second settlement. Under the second settlement, the telemarketing class remains eligible for the same range of payments, to be paid out of a settlement fund of $2.4 million. The $243,000, as well as any excess settlement fund money not claimed by the telemarketing class, will be donated to the Electronic Privacy Information Center,

a public interest research center devoted to privacy education and protection, and/or to one or more other similar charitable institutions. There will be no reversion to FMC, although FMC is entitled to recoup money from the unclaimed portion of the fund that it paid to satisfy the claims of any class members, including costs and class counsel's fees, and also including the amount that it paid to settle a similar but separate lawsuit and various fees and costs that it is obligated to pay in that and other lawsuits. The information-sharing class will still not receive any direct payment. Plaintiffs' class counsel continues to receive $750,000 in fees.

The intervenors opposed the second settlement and filed their second set of objections. Dkt. No. 157. They argued, *inter alia*, that the class notice was inadequate because it failed to provide individual notice to the information-sharing class and the second settlement is unfair because of the following:

- class counsel was obviously conflicted;
- the information-sharing class still receives no direct payment in return for releasing their claims;
- the telemarketing class benefits at the expense of the information-sharing class;
- the information-sharing class members are releasing claims worth millions under various states' consumer fraud statutes (including that of Massachusetts); and
- the information-sharing class has a "new claim" (also worth millions) against FMC because FMC tried to settle the case in a manner that violates due process.

Dkt. No. 157.

This court addressed each of the intervenors' objections before overruling them and approving the second settlement. Memorandum Decision, Dkt. No. 170. The intervenors appealed again. Dkt. No. 175. The Seventh Circuit again reversed and remanded the case, but narrowed the scope of its remand to a single issue: to fully consider the potential litigation value of the claims of the information-sharing class. *Mirfasihi II,* 450 F.3d at 750-51. It said that "the district court properly analyzed (and disposed of) the objectors'... complaints not relating to the

information-sharing class's claims evaluation and we need not address those issues here (nor need the district court revisit them upon remand)." *Id*. at 749 n.1.

On remand, the intervenors filed their third set of objections (also known as their second objection to the second proposed class action settlement). Dkt. No. 195. They argued that class notice was inadequate because it failed to provide individual notice to the information-sharing class and the second settlement is unfair because of the following:

- class counsel was obviously conflicted;
- the information-sharing class still receives no direct payment;
- the information-sharing class members are releasing claims worth millions under various states' consumer fraud statutes (including that of Massachusetts);
- the plaintiffs have valuable federal law claims under TILA and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"); and
- the information-sharing class has a "new claim" (also worth millions) against FMC because FMC tried to settle the case in a manner that violates due process.

Dkt. No. 195.

In its memorandum decision of July 17, 2007, the court considered the potential value of the information-sharing class's claims under each of the theories suggested by the intervenors and ultimately concluded that there was no realistic prospect of recovery under any applicable law. Dkt. No. 14. Because the other objections were outside the scope of the remand (or were otherwise meritless), the court concluded that the second settlement should once again be approved. The settlement still includes the same $750,000 attorneys' fee award for class counsel. The intervenors then filed the instant motion requesting an award of fees and expenses for "successfully prosecuting Green's and Perry's objection to the original settlement, and for facilitating the courts' analysis of the original and revised settlements." Dkt. No. 230.

## II.    Analysis

6

The Seventh Circuit has "taken the position that, in awarding attorneys' fees [in a class-action settlement], a district court may use the lodestar method, the percentage of recovery method, or some combination of the two." *Florin* v. *Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1247 n.2 (7th Cir. 1995) (citations omitted); *see also Great Neck Capital Appreciation Investment P'ship, L.P.* v. *PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 411 (E.D. Wis. 2002). At least for plaintiffs' counsel, "when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). "[C]lass counsel's compensation must be proportioned to the *incremental* benefits they confer on the class, not the total benefits." *Reynolds* v. *Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002) (emphasis in original). That is, they should be rewarded for producing the benefits above those which could have been recovered with little to no effort on counsel's part. *Id*.

Objectors' counsel are also permitted in some circumstances to claim a portion of a common settlement fund. *Reynolds*, 288 F.3d at 288. "The principles of restitution that authorize such a result also require, however, that the objectors produce an improvement in the settlement worth more than the fee they are seeking; otherwise they have rendered no benefit to the class." *Id.* (citations omitted); *see also Spark* v. *MBNA Corp.*, 289 F. Supp. 2d 510, 513 (D. Del. 2003). "Faced with such a claim, the court should consider 'whether the efforts of objectors' counsel 'improved' the settlement, 'assisted the court,' and/or 'enhanced the recovery' in any discernible fashion." *Great Neck*, 212 F.R.D. at 413 (citations omitted). Thus, like plaintiffs' attorneys' fees, objectors' counsel's fees must also be proportioned to the incremental

benefits that they produce for the class and comparable to what an attorney would receive from a paying client in a similar case. *Id*. at 416. "[C]ases in which objectors are awarded attorneys' fees are few and far between[, however]. In such cases, the objectors expended large amounts of time, money and resources, aided the court considerably in its consideration of proposed settlements and fee awards, and the class members were ultimately benefitted as a result of the objectors' efforts." *Spark*, 289 F. Supp. 2d at 513 (citing cases).[2]

As an initial matter, FMC argues that the court has already implicitly decided that the intervenors are not entitled to fees because it did not award them any in its August 11, 2005 decision approving the second settlement and the Seventh Circuit did not overturn that part of the decision. Even if that is a valid argument, the intervenors' current motion must be understood to be requesting fees for their contributions to this case from 2002 through the present date, whereas their previous motion covered only the period between 2002 and 2005. Whether or not they are entitled to fees, the intervenors are entitled to make a request for them at this (it is hoped, final) juncture of the case.

On the surface, it is clear that but for the intervenors, FMC would not be donating hundreds of thousands of dollars to consumer privacy protection charities, and that money would instead have reverted back to FMC. The intervenors raised objections with which the Seventh Circuit readily agreed, and the case was then subjected to a high level of scrutiny, a result which has some value in itself. The second settlement provides for a donation of at least $243,000 (and

---

[2] Defendants' argument that the American Rule against shifting attorneys' fees prohibits awarding fees to the intervenors is answered by *Florin* v. *Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1247 n.1 (7th Cir. 1995) ("The payment of attorneys' fees from a 'common fund' in a class action is a judge-made exception to the 'American Rule,' under which each side pays its own attorneys' fees."). The court may award fees to the intervenors from the common fund, although it must be careful to guard the interests of the class members. *Reynolds*, 288 F.3d at 288.

more likely twice that amount) to the Electronic Privacy Information Center and eliminates the reversion to FMC. Therefore, the intervenors did cause an improvement in the settlement that provides additional benefits to the plaintiffs and to the community, and that has the potential to prevent a case like this one from recurring in the future.

Whether the intervenors assisted the court overall, however, is a different matter. Unfortunately, the court is constrained to conclude that after raising their initial objections and pursuing their first appeal in 2002, which resulted in the Seventh Circuit's *Mirfasihi I* opinion, the intervenors have burdened the court at least as much as they have helped it.

After the parties reached their second settlement in 2005, the intervenors filed many of the same objections that they had raised against the first settlement, including their argument that it is unfair for the information-sharing class to receive nothing when they have claims that are worth millions under state consumer protection laws. This court took time to evaluate each of the intervenors' arguments before approving the second settlement in its August 11, 2005 decision, and concluded that the second settlement is fair because the information-sharing class's claims are worth a minimal amount, if anything. The intervenors again appealed. In the Seventh Circuit's *Mirfasihi II* opinion, it found most of their objections to be meritless, but decided that it would be prudent for this court to "consider and analyze the full cross-section of potentially applicable state law and arrive at a clearer estimate of the potential value of the information-sharing class's claims to allow proper evaluation of the proposed settlement." 450 F.3d at 751.

In response to the Seventh Circuit's limited remand, the intervenors filed a third set of objections to the settlement, rehashing many of the objections and arguments that they had made in both their 2002 objections and their 2005 objections (including some objections, like the lack

of individual class notice for the information-sharing class, that had been explicitly rejected by

the Seventh Circuit).  They did not provide the court with any additional legal support or

analysis for their assertions, however.  Instead, in their third set of objections, they apparently

lifted text from their second set of objections (their first objections to the second settlement).

*Compare* Dkt. No. 157, at 14, *with* Dkt. No. 195, at 4.

This court took the suggestion of the Seventh Circuit and "request[ed] additional briefing

... to obtain greater information and analyses pertinent to claims evaluation in this case."  450

F.3d at 751.  Plaintiffs and FMC provided the court with comprehensive 50-state surveys of state

consumer protection statutes and privacy laws.  That research, and not the intervenors'

unsupported statements, assisted the court greatly in evaluating the plaintiffs' potential claims

under each and every state's law, which was a lengthy and in the end fruitless undertaking.  The

intervenors continued to insist that the information-sharing class has claims that are worth

millions of dollars in statutory damages, but they were unresponsive to the points and citations

raised by the plaintiffs and FMC regarding the faults with those claims.  Ultimately, the court

concluded that the intervenors' arguments were unfounded and that the information-sharing class

has no viable claim under state consumer protection statutes, privacy laws, or common law

protections.  The court also disagreed with the intervenors' suggestion that the class might have

claims under TILA or the FCRA.  Therefore, the second settlement was approved again in the

same form as it was in before the second appeal to the Seventh Circuit.[3]

The objectors have not provided the court with any materials substantiating their fee

---

[3] The court notes that the parties have argued that the intervenors were obstructionist during the negotiations and mediation for the second settlement.  It is difficult for the court to evaluate that, however, and it is not necessary to do so in order to reach a result on this motion.

request, which is to transfer the entire $750,000 previously awarded to class counsel to their

counsel instead.  They have not submitted any information concerning how many hours their

counsel spent on this case and have not filed any other supporting documentation of the type that

usually accompanies a fee request.  Additionally, they have failed to analyze the incremental

benefit that they produced as compared with the first settlement, which they had no part in

producing.  These omissions makes the court's task in determining whether a fee is appropriate,

and if so, in what amount, even more difficult.

Comparing this case with those cited by the parties, however, is useful.  The situation in

*Great Neck* was similar to the circumstances involved here.  That case involved a settlement of a

securities fraud class action.  212 F.R.D. at 406.  The objector intervened because the language

of the settlement was broad enough that it might extinguish ERISA claims that were being

pursued against the defendant company in a separate lawsuit.  *Id.*  The court agreed that such an

effect would be unfair, and the parties returned to the bargaining table to narrow the effect of the

settlement.  *Id.*  The court found that the objector's contribution benefited the ERISA claimants

as well as the class as a whole and that he also assisted the court by enhancing the adversarial

process.  *Id.* at 413, 416.  The court recognized the difficulty of determining what an objector

would receive from a paying client and of determining the exact value of the benefits conferred

by the objector.  *Id.* at 416.  It therefore compared the relative value of the objector's counsel's

contribution to that of class counsel and awarded the objector five per cent of the amount that

had been requested by class counsel, plus expenses.  *Id.* at 416.[4]

_____

[4] Additionally, the objectors in *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1214 (D.N.M. 1998), engaged counsel on a contingent basis specifically to object to class counsel's fee request, and their counsel in turn engaged prominent economic experts who conducted a full-scale damage analysis, prepared detailed briefs, and participated in meetings and hearings with the parties' counsel.  Their arguments were successful and the

The facts here include intervenors who caused an improvement in a class action settlement that will benefit a community and has the potential for indirectly benefiting the plaintiffs. On the other hand, while the intervenors correctly identified some troublesome elements of the settlement, they did not meaningfully assist the court in analyzing those issues. With these considerations in mind, the court will follow the examples of *Great Neck* and other cases that awarded objectors an amount equivalent to between three and five per cent of the fees awarded to class counsel, but with the following modification: that amount shall be reduced by half to account for the burden that the objectors have placed on all parties involved.[5] The intervenors are therefore awarded $18,750, which is 2.5 per cent of $750,000, to cover their fees, costs, and expenses.

## III.    Order

Intervenors' motion for an award of attorneys' fees and expenses [# 230] is granted. Intervenors are awarded $18,750, which will be deducted from the common settlement fund in

---

court reduced the fee to be awarded class counsel by over a million dollars. *Id.* The court found that the objectors had provided a "useful, historical, and comparative backdrop so that the Court was not required to consider the request of lead counsel in a vacuum," and that they were entitled to three per cent of the fee that was to be awarded to class counsel. *Id.* at 1215. Similarly, the court in *In re Domestic* found that objectors who had "significantly refined the issues germane to a consideration of the fairness of th[e] complex settlement and their participation transformed the settlement hearing into a truly adversarial proceeding" were entitled to a fee of .266 per cent of the value of the settlement fund. 148 F.R.D. at 359-60. Class counsel had received 5.25 per cent. *Id.* In contrast, the objectors in *Spark* responded to a suggestion made by the court in the course of a fairness hearing that the amount of attorneys' fees requested by class counsel might be inappropriate. 289 F. Supp. 2d at 511-13. They argued against the fee request and provided the court with a leading citation on the topic of appropriate lodestar calculations, which helped the court in making its decision to reduce the amount of fees to be paid to class counsel. *Id.* at 512. The court denied the objectors a fee, however, stating that the "actions of the objectors in this case do not rise nearly to the level of involvement of those objectors who have been awarded attorneys' fees." *Id.* at 514.

[5]The intervenors have not cited any case in which the objectors' counsel were awarded more than 25 per cent of the fee received by class counsel. Their request here for 100 per cent of the $750,000 awarded to class counsel is unreasonable. Furthermore, it would be unjust to divest class counsel of their fee, which was awarded to them based only on the work they had done as of 2002, and which is surely become less generous when all that has happened in the case since that time is taken into consideration.

this case before FMC takes any of its allowable deductions. All pending motions having been resolved, this case is dismissed with prejudice and terminated. The stay of time for the intervenors to file their notice of appeal pending resolution of this motion, entered on August 7, 2007, is hereby lifted. Any notice of appeal must be filed within 30 days of this order.


Dated: September 6, 2007                          Enter:

                                                  JOAN HUMPHREY LEFKOW
                                                  United States District Judge