MHN

# CERTIFIED COPY

*A True Copy*

*Clerk of the United States Court of Appeals for the Seventh Circuit*

In the

# United States Court of Appeals D

## For the Seventh Circuit

JAN 2 1 2009 RC

1-21-2009

MICHAEL W. DOBBINS

CLERK, U.S. DISTRICT COURT

No. 07-3402

MAV MIRFASIHI, individually and on behalf of all
others similarly situated,

*Plaintiff-Appellee,*

*v.*

FLEET MORTGAGE CORPORATION,

*Defendant-Appellee.*

APPEAL OF:

01 cv 722

ANGELA PERRY and MICHAEL E. GREEN,

*Objectors-Appellants.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 0722—Joan Humphrey Lefkow, *Judge.*

---

ARGUED DECEMBER 4, 2008—DECIDED DECEMBER 30, 2008

---

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* This class-action suit is before
us for the third time; our previous opinions are reported

No. 07-3402

at 356 F.3d 781 (7th Cir. 2004), and 450 F.3d 745 (7th Cir. 2006). The current appeal like the previous ones presents questions concerning class-action procedure.

The suit was brought eight years ago on behalf of approximately 1.6 million persons whose home mortgages were owned by Fleet Mortgage Corporation. The complaint charges that without their permission Fleet transmitted information about these persons' finances (plus other personal information, such as phone numbers), obtained from their mortgage files, to telemarketing companies which then, in conjunction with Fleet, used that information and deceptive practices to try to sell them financial and other services that they otherwise would not have been interested in. Fleet's transmission of the information to the telemarketers was alleged to violate, among other laws, the federal Fair Credit Reporting Act and state consumer protection statutes. Two plaintiff classes were proposed—a "pure" "information-sharing" class of 1.4 million customers of Fleet whose financial information Fleet transmitted to the telemarketers but who did not buy anything from them, and a separate "telemarketing" class composed of 190,000 customers of Fleet who made purchases from the telemarketers. The second class is not directly involved in this appeal.

The parties negotiated a settlement, which the judge approved in 2002 simultaneously with certifying the classes. But he did not explain why he thought certification proper; he merely recited the criteria in Rule 23. The settlement gave nothing to the information-sharing

No. 07-3402                                                    3

class, while barring its members from bringing individual suits. The treatment of that class was one of the grounds for our reversing, at the behest of two class members who had objected to the settlement and intervened in the litigation, the district court's judgment approving the settlement.

On remand the parties negotiated a new settlement, which the district court (a different judge) approved. This settlement required Fleet to pay to public interest law firms (or other charitable groups) concerned with consumer privacy the $243,000 that Fleet had earned from its sale of information to the telemarketers, plus any of the funds earmarked for the members of the telemarketing class that ended up being unclaimed, minus, however, considerable expenses. As far as the information-sharing class was concerned, the basis of the district judge's approval of the new settlement, which again gave that class nothing, was that the value of the class members' claim was zero: they had no chance of obtaining damages if the case went to trial and judgment.

We again reversed at the behest of the objecting class members, ruling that the district judge had not made an adequate effort to value the claims of the information-sharing class. Among other things, she had considered the consumer protection statutes of only a few states, even though there were members of the information-sharing class in every state.

On remand she conducted a more complete survey of state law and again concluded that the claims had no value. The objecting class members again appeal, arguing

not only that the claims have value (perhaps in excess of a billion dollars!) but also that the objectors should have been awarded a much larger legal fee than the $18,750 that the judge awarded them.

There is no evidence that any members of the information-sharing class suffered any harm from Fleet's disclosing information about them to telemarketers. Nineteen states plus the District of Columbia, however, permit an award of statutory damages, ranging from $25 in Massachusetts to $10,000 in Kansas but averaging $1,046.25, for violations of their consumer protection statutes. (These figures are based on a table in the supplemental appendix to the appellees' brief in this court, and are not contested by the appellants. We exclude two states, California and Idaho, that allow a $1,000 award of statutory damages in a class action only to the class as a whole.)

It is arguable that the unauthorized disclosure of financial information violated those statutes. But the statutes do not permit the award of such damages in a class action. The objectors do not challenge the application of that limitation to a class action filed in federal district court. Yet we have held that unless based on state substantive law such a limitation does not bind a federal court in a class action litigated in that court. *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008). Having failed to preserve the issue, the objectors cannot invoke that ruling—and anyway they haven't tried to.

They do argue that even if the claims of the members of the information-sharing class have no value in a class

action, they have value in individual actions. A number of states do as we just noted authorize statutory damages in such actions, and conceivably some of the 1.4 million members of the class (not all of whom live in such states, however) would sue if not precluded by the settlement. That preclusion is a benefit to Fleet, and the objectors argue that Fleet should pay the class for it. But after eight years of litigation, the objectors are unable to identify a single member of the class who would sue on his own dime to collect the modest statutory damages available in an individual suit. Cf. *id.* at 747.

The objectors point out that state consumer protection laws to one side, the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.,* authorizes the award of statutory damages of not less than $100 or more than $1000 for a willful violation of the Act, without need to prove harm. § 1681n(a)(1)(A); see *Safeco Ins. Co. v. Burr,* 127 S. Ct. 2201, 2206 (2007); compare § 1681o(a). But although the Act was mentioned in the complaint, the objectors first sought to apply it to the information-sharing class after our first remand. That was too late. *United States v. Husband,* 312 F.3d 247, 251 (7th Cir. 2002) (a party " 'cannot use the accident of remand as an opportunity to reopen waived issues' "). On the second appeal, which followed that remand, the parties to the settlement pointed out that the objectors had indeed forfeited their claim under the Act. We did not discuss the Act in our second opinion, but implicitly excluded it from further consideration by stating that "on remand, the district court should consider and analyze the full cross-section of potentially applicable *state* law." 450 F.3d at 751 (emphasis added).

On remand, the district judge nevertheless discussed (and rejected) the applicability of the Act to the class. She should not have wasted her time on the issue. *United States v. Husband, supra*, 312 F.3d at 251. The objectors argue that the scope of the remand was ambiguous; it was not; but if the objectors thought it was, or, more plausibly, wanted us to reconsider the scope of the remand, they should have petitioned us for clarification or reconsideration, and they did not. Had they done so, the parties to the settlement would have argued forfeiture and lack of merit, and we would have ruled against the objectors and cut off further litigation on the issue, saving the district judge time and the parties cost. For besides having been forfeited, the claim that Fleet violated the Fair Credit Reporting Act has no possible merit, and in fact is frivolous.

The Act regulates "consumer report[s]" issued by "consumer reporting agenc[ies]." 15 U.S.C. § 1681a(d)(1). A consumer reporting agency, so far as pertains to this case, is "any person which . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." § 1681a(f). Fleet does not regularly engage in such practices; it is not a consumer reporting agency—it is a bank. *Frederick v. Marquette National Bank*, 911 F.2d 1, 2 (7th Cir. 1990). "Consumer reporting agencies naturally depend on suppliers of credit to furnish them with credit information. It is the consumer reporting agency that is charged with assuring the accuracy, confidentiality and proper dissemination

of this information, however. The [Fair Credit Reporting Act] does not impose obligations upon a creditor who merely passes along information concerning particular debts owed to it." *DiGianni v. Stern's*, 26 F.3d 346, 349 (2d Cir. 1994).

Furthermore, "a creditor who merely passes along information concerning particular debts owed to it" is not a purveyor of "consumer reports." For excluded from the definition of consumer report is a "report containing information solely as to transactions or experiences between the consumer and the person making the report." § 1681a(d)(2)(A)(i). What Fleet sold the telemarketers was "information solely as to transactions . . . between the consumer [the Fleet mortgagor] and the person making the report [Fleet]." See *DiGianni v. Stern's, supra*, 26 F.3d at 349; *Smith v. First National Bank*, 837 F.2d 1575, 1578 (11th Cir. 1988) (per curiam).

So the claims of the information-sharing class are indeed worthless, and if so even $243,000 might seem excessive compensation—and the amount will grow if not all the settlement money allocated to the telemarketing class is claimed by members of the class—and maybe therefore those claims ought simply to be dismissed. But even if the settlement is merely a nuisance settlement, such settlements are permitted; defendants can be trusted to make such settlements only if it is in their best interest to do so.

We are disheartened that the litigation by the information-sharing class has been allowed to drag on

for eight years, when it had no merit—and that as a matter of law, without need to take evidence. It is an example of the typical pathology of class action litigation, which is riven with conflicts of interest, as we discussed recently in *Thorogood v. Sears, Roebuck & Co., supra*, 547 F.3d at 744-46. The lawyers for the class could not concede the utter worthlessness of their claim because they wanted an award of attorneys' fees. The lawyers for Fleet were reluctant to argue the utter worthlessness of the claim because they were able to negotiate a settlement that cost their client virtually nothing—provided they did not take such a strong stand that it jeopardized the class lawyers' shot at a generous award of attorneys' fees, and hence the settlement. And the objectors were motivated to exaggerate the value of the claim of the information-sharing class so that they could get a generous award of attorneys' fees. At the very outset of the case, before certifying the class, the district court should have required the parties to present the belatedly presented survey of the consumer protection laws of the 50 states, plus argument concerning the scope of the Fair Credit Reporting Act, to demonstrate the existence of a colorable claim.

With what can only be described as *chutzpah*, defined by Leo Rosten as "gall, brazen nerve, effrontery, incredible 'guts,' presumption plus arrogance such as no other word and no other language can do justice to," the objectors ask us to substitute them for the lawyers for the information-sharing class and award them the entire $750,000 in attorneys' fees that the district judge awarded those lawyers; in other words, the objectors are

asking us for 40 times the $18,750 attorneys' fee that she awarded them. The request is preposterous.

It is true that they twice prevailed on appeal and that the sequel to the first appeal was a genuine improvement in the settlement with respect to the telemarketing class. But the sequel to the second appeal was only a very slight improvement in the settlement with respect to the information-sharing class; and it was an improvement less because the $243,000 went to charity, rather than to the other class, than because that figure may grow (though only to a maximum of $804,000, because of the expenses we mentioned). The benefit to the informationsharing class would still be meager no matter how much money went to a public interest law firm or a charity rather than to the members of the class.

As important to a proper evaluation of the objectors' contribution as the meagerness of the relief that they obtained by extending the litigation by several years is their lack of constructive activity in the district court. They did not propose terms of settlement or otherwise participate constructively in the litigation other than to appeal. A proper attorneys' fee award is based on success obtained *and* expense (including opportunity cost of time) incurred. See, e.g., *Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992); *Hensley v. Eckerhart*, 461 U.S. 424, 435-37 (1983); *Cole v. Wodziak*, 169 F.3d 486, 487-88 (7th Cir. 1999). The success obtained by the objectors was meager, as we have said, and the cost incurred—unknown. The fee applications that they submitted to the district court were barren of the detail required for an assessment of

that cost. Moreover, the district judge initially determined their fee to be $37,500, and only later cut it in half as a sanction for their irresponsible litigation tactics (paralleled in this court by the many inaccurate and misleading statements in their briefs and post-argument submission) that exasperated a very patient district judge.

We are mindful that "it is desirable to have as broad a range of participants in the [class action] fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally," and that "this participation is encouraged by permitting lawyers who contribute materially to the proceeding to obtain a fee." *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 288 (7th Cir. 2002). But "the principles of restitution that authorize such a result also require . . . that the objectors produce an improvement in the settlement worth more than the fee they are seeking; otherwise they have rendered no benefit to the class." *Id*. The improvement that the objectors produced in this case, minus the detriment caused by their courtroom antics, barely justified the modest fee that the judge awarded them.

This case is *finito*.

AFFIRMED.